## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**JEFFREY HAVARD,**                                                  *Petitioner*

*versus*                                          **CIVIL ACTION NO. 5:08-cv-275-KS**

**CHRISTOPHER B. EPPS, Commissioner**
**Mississippi Department of Corrections**
**and JIM HOOD, Attorney General, State**
**of Mississippi**                                               *Respondents*

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS
_____

**COME NOW** the respondents in the above styled and numbered cause and files this

Answer to Petition for Writ of Habeas Corpus filed in this matter.  In response to the

allegations contained in the numbered paragraphs of the petition, respondents would show

unto the Court the following:

### INTRODUCTORY STATEMENT

This Court has jurisdiction over habeas corpus petitions under 28 U.S.C. § 2254 as

amended on April 24, 1996, by the Antiterrorism and Effective Death Penalty Act (AEDPA).

The fact that this habeas petition is filed after that date requires that the provisions of the

AEDPA be applied in full force to this petition.  *Nobles v. Johnson*, 127 F.3d 409 (5th Cir.

1997); *Williams v. Cain*, 125 F. 3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d

432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism

and Effective death Penalty Act of 1996 (AEDPA), Pub.L.No.104-132, 110 Stat.1214 (1996),

we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).”). *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The proper application of the AEDPA is fully explained in the decision of the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The answer of the respondents is as follows:

1.	Respondents deny the allegations contained in the paragraph labeled I. INTRODUCTION of the petition.

2.	Under the heading labeled II. STATEMENTS PURSUANT TO MODEL HABEAS FORM, Respondents admit the allegations contained in paragraphs 1-15, 17-23, and deny the allegations contained in paragraph 16, as all of the claims in the petition have not previously been fairly presented to the courts below for consideration.

3.	Respondents deny the allegations contained in the paragraph labeled III.  HABEAS CORPUS STANDARDS of the petition.

4.	Under the heading labeled IV. CLAIMS:

5.	Respondents deny the allegations contained in CLAIM I;

6.	Respondents deny the allegations contained in CLAIM II;

7.	Respondents deny the allegations contained in CLAIM III;

8.	Respondents deny the allegations contained in CLAIM IV;

9.	Respondents deny the allegations contained in CLAIM V;

2

10.     Respondents deny the allegations contained in CLAIM VI;

11.     Respondents deny the allegations contained in CLAIM VII;

12.     Respondents deny the allegations contained in CLAIM VIII;

13.     Respondents deny the allegations contained in CLAIM IX;

14.     Respondents deny the allegations contained in CLAIM X;

15.     Respondents deny the allegations contained in CLAIM XI;

16.     Respondents deny the allegations contained in CLAIM XII;

17.     Respondents deny the allegations contained in CLAIM XIII;

18.     Respondents deny the allegations contained in CLAIM XIV;

19.     Respondents deny the allegations contained in CLAIM XV.

20.     Respondents deny the allegations contained in the paragraph labeled

V. CONCLUSION, as the petitioner is entitled to no relief.

## AFFIRMATIVE DEFENSES

**AND NOW** having responded to each of the allegations contained in the Petition for

Writ of Habeas Corpus, Respondents would affirmatively show unto the Court the following:

A.     The Court lacks jurisdiction over the parties and the subject matter.

B.     The petition and/or its individual grounds fail to state a claim upon which

relief may be granted.

C.     The constitutional grounds cited for relief in the petition are precluded from

federal consideration in that such rest upon independent and adequate state law grounds.

3

D.     The grounds cited for relief in the petition are precluded from federal consideration in that such rest on decisions of the Mississippi Supreme Court that are not contrary to established precedent of the United States Supreme Court.

E.     The grounds cited for relief in the petition are precluded from federal consideration in that such rest upon a reasonable application of clearly established federal law as determined by the Supreme Court of the United States, and a reasonable determination of the facts in light of the evidence presented in state court proceedings.

F.     The grounds given for relief are without merit.

G.     Claim II was procedurally barred from consideration on direct appeal before the Mississippi Supreme Court due to the absence of any contemporaneous objection at trial. The issue is therefore procedurally barred from consideration by this Court.  Additionally, petitioner now advances an alternative claim of ineffective assistance of counsel for the failure to object.  This is a new argument brought forth by the petitioner that has never been presented to any court for consideration and is therefore unexhausted and not properly before this Court for consideration.

Claim III was procedurally barred from consideration on direct appeal before the Mississippi Supreme Court due to the absence of any contemporaneous objection at trial. The issue was again found to be procedurally barred from consideration in petitioner's post-conviction pleadings.  The issue is therefore procedurally barred from consideration by this Court.  Additionally, petitioner now advances an alternative claim of ineffective assistance

of counsel for the failure to object.  This is a new argument brought forth by the petitioner that has never been presented to any court for consideration and is therefore unexhausted and not properly before this Court for consideration.

Claim XII of the petition was improperly presented to the Mississippi Supreme Court for consideration on direct appeal.  That court found the issue to be suitable for presentation in a post-conviction pleading but not proper for direct appeal.  Thereafter, the petitioner did not raise this issue in his post-conviction pleading making the subject procedurally barred from consideration by this Court.

Claim XIV of the petition is barred from consideration in that it is a new claim that has never before been fairly presented to the state court for consideration, and is therefore barred from consideration by this Court as well.

## AFFIRMATIVE MATTERS PURSUANT TO RULE 5

Pursuant to 28 U.S.C.A. Section 2254, Rule 5, Respondents would show unto the Court the following:

### 1.  Procedural Background

The petition at bar comes to this Court from a case originating in the Circuit Court of Adams County, Mississippi, wherein Jeffery Havard was convicted of the crime of capital murder during the commission of a sexual battery, in violation of MISS. CODE ANN. § 97-3-19 (2) (e), and was sentenced to death.  Havard was indicted on June 24, 2002, for the capital murder of Chloe Madison Britt, a six month-old-child.  Jury selection began in the Adams

County Circuit Court on December 16, 2002.  Trial was conducted and the jury returned a

verdict of guilty on December 18, 2002.

After the jury returned its guilty verdict, a sentencing hearing was held on the capital

murder conviction where the jury heard evidence in aggravation and mitigation of sentence.

After due deliberation, on December 19, 2002, the jury returned a sentence of death in proper

form.  The jury verdict on sentence reads as follows:

> We, the jury, unanimously find from the evidence beyond a reasonable doubt
> that the following facts existed at the time of the commission of the capital
> murder.  One, that the defendant actually killed Chloe Madison Britt.  Next,
> we, the jury, unanimously find that the aggravating circumstances of
>
> that the capital offense was committed while defendant was engaged in the
> commission of or an attempt to commit sexual battery.
>
> That the capital offense was especially heinous, atrocious or cruel
>
> exists beyond a reasonable doubt and are sufficient to impose the death penalty
> and that there are insufficient mitigating circumstances to outweigh the
> aggravating circumstances, and we further find unanimously that the defendant
> should suffer death.
>
> /s/ Cynthia Ethridge
> foreman of the jury

Petitioner filed a post-trial Motion for Judgment Notwithstanding the Verdict, or, in

the Alternative, for a New Trial.  The motion was denied on February 3, 2003.  Thereafter

Havard took his automatic appeal to this Court represented by new counsel, the Mississippi

Office of Capital Defense Counsel (MOPCC), and raised the following assignments of error:

I.      TRIAL COUNSEL WERE INEFFECTIVE IN FAILING TO ENSURE

6

THAT JUROR DOROTHY SYLVESTER WAS EXCUSED FOR CAUSE WHERE SHE WAS BIASED AGAINST JEFFREY.

II. TRIAL COUNSEL WERE INEFFECTIVE IN FAILING TO ASK ANY QUESTIONS RELATED TO THE POTENTIAL JURORS QUALIFICATIONS TO SERVE OF [SIC] A DEATH PENALTY JURY.

III. THE SEATING OF A JUROR WHO WOULD AUTOMATICALLY VOTE FOR THE DEATH PENALTY IN ANY AND ALL MURDER CASES AND THIS JUROR'S FAILURE TO ANSWER THE TRIAL COURT'S QUESTION ON THIS POINT DEPRIVED JEFFREY HAVARD OF A FAIR TRIAL CONSISTENT WITH THE SIXTH, EIGTH [SIC] AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND THE CORRESPONDING PROVISIONS OF OUR STATE CONSTITUTION.

IV. JEFFREY HAVARD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL ADOPTED A DEFENSIVE STRATEGY AND THEN FAILED TO INVESTIGATE, SECURE EXPERT ASSISTANCE, OFFER ANY EVIDENCE IN SUPPORT OF THE THEORY OR REQUEST A JURY INSTRUCTION IN SUPPORT OF THE THEORY.

V. PROSECUTORIAL MISCONDUCT AT CLOSING ARGUMENT OF THE CULPABILITY PHASE VIOLATED JEFFREY HAVARD'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS AND DEPRIVED HIM OF A FUNDAMENTALLY FAIR TRIAL.

VI. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF VICTIM IMPACT TESTIMONY AT SENTENCING.

VII. COUNSEL WERE INEFFECTIVE FOR NOT DEVELOPING AND PRESENTING COMPELLING EVIDENCE IN MITIGATION OF PUNISHMENT.

VIII. JEFFREY HAVARD WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN CLOSING ARGUMENT AT THE

7

SENTENCING PHASE OF THE TRIAL.

IX.     THE TRIAL COURT ERRED IN OVERRULING AN OBJECTION
        MADE BY DEFENSE COUNSEL TO THE USE OF AN
        IRRELEVANT LIFE PHOTOGRAPH OF THE VICTIM THEREBY
        CAUSING PREJUDICIAL SYMPATHY FOR THE VICTIM.

X.      THE TRIAL COURT ERRED IN ANSWERING A JURY QUESTION
        IN SUCH A WAY AS TO CAUSE SPECULATION OF SOME
        FUTURE RELEASE IF THE DEFENDANT IS NOT SENTENCED
        TO DEATH THEREBY INJECTING AN "ARBITRARY FACTOR"
        INTO THE SENTENCING PHASE OF THIS TRIAL IN VIOLATION
        OF STATE LAW AND THE STATE AND FEDERAL
        CONSTITUTIONS.

XI.     THE TRIAL COURT'S LIMITING INSTRUCTION OF THE
        ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL
        AGGRAVATING CIRCUMSTANCE WAS ITSELF
        UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

XII.    THE DEATH SENTENCE IN THIS CASE MUST BE VACATED
        BECAUSE THE INDICTMENT FAILED TO CHARGE A DEATH
        PENALTY ELIGIBLE OFFENSE.

XIII.   THE TRIAL COURT ERRED IN ALLOWING THE JURY TO
        CONSIDER THE AGGRAVATORS OF SEXUAL BATTERY AND
        ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL, WHICH
        THE JURY USED IN SUPPORT OF A SENTENCE OF DEATH,
        DENYING HAVARD OF A RELIABLE SENTENCE AS
        GUARANTEED BY THE UNITED STATES AND THE
        MISSISSIPPI CONSTITUTIONS.

XIV.    THE AGGREGATE ERROR IN THIS CASE REQUIRES
        REVERSAL OF THE CONVICTION AND DEATH SENTENCE.

Original Brief of Appellant at vii-viii.

On February 9, 2006, the Mississippi Supreme Court rendered its opinion affirming

the conviction of capital murder and sentence of death.  A petition for rehearing was filed

8

and denied on May 25, 2006.  *See Havard v. State*, 928 So.2d 771 (Miss. 2006).

From that adverse decision, Havard sought relief by filing a petition for writ of certiorari with the United States Supreme Court.  In that petition Havard raised the following question:

> 1.    In a death penalty case involving a charge of sexual assault, does counsel render ineffective assistance of counsel where he fails to remove a prospective juror who states on voir dire that as a result of the rape of a family member she can not be fair and in fact serves on the jury that finds the defendant guilty and sentences him to death?

Petition for Certiorari at i.

The United States Supreme Court denied certiorari on January 8, 2007.  *Havard v. Mississippi*, 549 U.S. 1119, 127 S.Ct. 931, 166 L.Ed.2d 716  (2007).

On May 25, 2007, Havard filed his Petition for Post-Conviction Relief, followed by a Supplement to that Petition regarding Ground I of his argument, filed on July 24, 2007 and raised the following claims:

> GROUND I.  DURING THE GUILT PHASE OF HIS TRIAL HAVARD'S LAWYERS FAILED TO ADOPTED (SIC) A DEFENSE STRATEGY.
>
> GROUND II.  HAVARD'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE OF TRIAL WITHING THE MEANING OF STRICKLAND V. WASHINGTON AND ITS FEDERAL PROGENY, AS GUARANTEED BY THE SIXTH AMENDMENT AS WELL AS THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AS WELL AS THE CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION AND MISSISSIPPI CASE LAW WERE DENIED BECAUSE HIS TRIAL COUNSEL WERE INEFFECTIVE BY NOT INVESTIGATING, DEVELOPING AND PRESENTING COMPELLING EVIDENCE IN MITIGATION OF

9

PUNISHMENT.

GROUND III.   AS A COMPLETELY SEPARATE AND DISTINCT
FAILURE TO RENDER EFFECTIVE ASSISTANCE OF COUNSEL
DURING THE PENALTY PHASE OF TRIAL, HAVARD'S TRIAL
COUNSEL WERE INEFFECTIVE IN FAILING TO DEVELOP AND
PRESENT COMPELLING EVIDENCE IN MITIGATION OF
PUNISHMENT BASED UPON INVESTIGATION INTO JEFFERY'S
CHILDHOOD AND FAMILY HISTORY, WHICH HAD THE EFFECT OF
DENYING HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL DURING THE GUILT PHASE OF TRIAL
WITHIN THE MEANING OF STRICKLAND V. WASHINGTON AND ITS
FEDERAL PROGENY, AS WELL AS THE CORRESPONDING
PORTIONS OF THE MISSISSIPPI CONSTITUTION AND MISSISSIPPI
CASE LAW.

GROUND IV.   AS A SEPARATE ISSUE AND COMPLETELY
DIFFERENT GROUND FOR RELIEF TRIAL COUNSEL WERE
INEFFECTIVE DURING THE PENALTY PHASE OF TRIAL IN FAILING
TO DEVELOP AS A MITIGATION THEORY HAVARD'S SUCCESSFUL
ADAPTATION TO HAVING BEEN INSTITUTIONALIZED AT CAMP
SHELBY.

GROUND V.  TRIAL COUNSEL WERE INEFFECTIVE IN FAILING TO
ASK ANY QUESTIONS RELATED TO THE POTENTIAL JURORS'
QUALIFICATIONS TO SERVE UPON A DEATH PENALTY JURY
WHICH HAD THE EFFECT OF DENYING HIS SIXTH AMENDMENT
RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE
GUILT AND SENTENCING PHASES OF TRIAL WITHING THE
MEANING OF STRICKLAND V. WASHINGTON AND ITS FEDERAL
PROGENY, AS WELL AS THE CORRESPONDING PORTIONS OF THE
MISSISSIPPI CONSTITUTION AND MISSISSIPPI CASE LAW.

GROUND VI.  HAVARD WAS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL IN CLOSING ARGUMENT AT THE
SENTENCING PHASE OF HIS TRIAL WHICH HAD THE EFFECT OF
DENYING HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE OF TRIAL
WITHIN THE MEANING OF STRICKLAND V. WASHINGTON AND ITS
FEDERAL PROGENY, AS WELL AS THE CORRESPONDING

PORTIONS OF THE MISSISSIPPI CONSTITUTION AND MISSISSIPPI CASE LAW.

GROUND VII.   PROSECUTORIAL MISCONDUCT AT CLOSING ARGUMENT OF THE CULPABILITY PHASE VIOLATED JEFFREY HAVARD'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS AND DEPRIVED HIM OF A FUNDAMENTALLY FAIR TRIAL.

GROUND VIII.   THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF VICTIM IMPACT TESTIMONY AT SENTENCING.

GROUND IX.   JEFFERY HAVARD'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE US CONSTITUTION WERE VIOLATED WHEN THE COURT IMPROPERLY RESPONDED TO A QUESTION POSED BY THE JURY DURING THE SENTENCING PHASE.

GROUND X. THE TRIAL COURT'S LIMITING INSTRUCTION OF THE ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATING CIRCUMSTANCE VIOLATED MR. HAVARD'S CONSTITUTIONAL RIGHTS BECAUSE IT WAS UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

GROUND XI.   PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT AND NOTICE AND JURY TRIAL GUARANTEES UNDER THE SIXTH AMENDMENT WERE VIOLATED BECAUSE THE INDICTMENT FAILED TO CHARGE A DEATH PENALTY ELIGIBLE OFFENSE.

GROUND XII.   MR. HAVARD'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ALLOWED THE JURY TO COLLECTIVELY CONSIDER TWO PARTICULAR AGGRAVATORS, WHICH THE JURY USED IN SUPPORT OF A SENTENCE OF DEATH, THUS DENYING MR. HAVARD A RELIABLE SENTENCE AS GUARANTEED BY THE US CONSTITUTION.

GROUND XIII.   MR. HAVARD'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING BOTH THE TRIAL AND PENALTY PHASE OF HIS TRIAL WITHIN THE MEANING OF STRICKLAND V. WASHINGTON AND ITS FEDERAL PROGENY, AS

GUARANTEED BY THE SIXTH AMENDMENT AS WELL AS THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AS WELL AS THE CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION AND MISSISSIPPI CASE LAW WERE DENIED BECAUSE HIS TRIAL COUNSEL, ROBERT E. CLARK, WAS FULLY INCOMPETENT TO PURSUE LEGAL RELIEF ON MR. HAVARD'S BEHALF.

GROUND XIV.  MR. HAVARD WAS DENIED HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND CORRESPONDING PROVISIONS OF THE MISSISSIPPI CONSTITUTION DUE TO CUMULATIVE ERROR. MR. HAVARD'S CONSTITUTIONAL RIGHTS WERE VIOLATED DURING BOTH THE GUILT AND SENTENCING PHASES OF HIS TRIAL AND EACH INDIVIDUAL CLAIM ARTICULATED ABOVE WARRANTS POST-CONVICTION RELIEF.  MORE IMPORTANTLY, THE COMBINED PREJUDICIAL EFFECT OF ALL THESE ERRORS, TAKEN TOGETHER, REQUIRES REVERSAL.

Petition For Post-Conviction Relief With Exhibits at i-iv.

On May 22, 2008, the Mississippi Supreme Court denied petitioner's motion for post-conviction relief.  A petition for rehearing was filed and denied on August 28, 2008.  *See Havard v. State*, 988 So.2d 322 (Miss. 2008).

On April 10, 2009, Havard then filed with this Court this instant Petition for Writ of Habeas Corpus.

### 2.  Factual Background

In early 2002, Rebecca Britt (hereinafter Britt) and her months old daughter Chloe, the murder victim, moved into a trailer with Britt's boyfriend, Jeffery Havard, the petitioner. On February 21, 2002, the day began with Chloe being dropped off at the Grace Methodist

Church daycare center.  Care givers at the center testified that although Chloe did have a cough that day she showed no signs of injuries in her rectal area but did have a diaper rash. Tr. 325-28, 333-34.  Later testimony also revealed the daycare employees considered Chloe a clean, well-nourished happy child that was not sickly.  Tr. 325-26, 335.

Britt picked up Chloe from the daycare center at approximately 5:30 p.m. and drove her home.  At around 6:30 p.m. Britt fed Chloe and gave her some medication for her cough. Tr. 345.  Around 7:30 p.m. the petitioner provided cash and instructed Britt to go to the store and buy food for dinner.  She did this and upon returning home the petitioner informed her he had bathed Chloe and put her to bed.  Tr. 345-46.  Britt found this to be unusual as petitioner had not previously shown much interest in interacting with the child. Tr. 343.  Britt also noticed that petitioner had removed the sheets from the bed and had placed them by the kitchen stove.  He stated to Britt he intended to wash them.  Tr. 346.

Britt checked on Chloe at that time and found the child to be sleeping.  In the dimly lighted room she heard Chloe make a little noise so she picked her up to make sure nothing was in her throat.  She found Chloe to be fine at that time and put her back to bed.  Tr. 347. As Britt was about to begin cooking dinner the petitioner asked her to go to Blockbuster to rent some movies for the evening.  Britt found this to be unusual in that they had just purchased a satellite system a few days before from which movies could be rented without leaving the home. Tr. 347-48.  Still, Britt did go to Blockbuster and returned with rented movies.  Upon her return, petitioner was in the bathroom and Britt proceeded to check on

13

Chloe again.  She found that Chloe was not breathing and had turned blue. Tr. 348-49.  She rushed the child to the living room and began CPR, and also instructed petitioner to go next door, to his grandparent's house, and call for an ambulance. Tr.349.  Instead, petitioner suggested that they take the child to the hospital.  Despite Chloe's condition the petitioner was slow to dress himself and proceed to the hospital.  Petitioner even drove past the turn for the hospital and had to be redirected by Britt to turn around and go back in the right direction. Tr. 349-50.

The car arrived at Community Hospital and medical personnel took charge of Chloe. Upon arrival Britt handed Chloe over to Shelley Smith, a phlebotomist at the hospital.  Smith immediately noted the child had no pulse and was cyanotic as well as having a bruise on the lip. Tr. 360-61.  Smith asked what had happened to the child and petitioner responded that he had given Chloe some medicine and put her to bed.  Tr. 362-63.  Patricia Murphy, a registered nurse at the hospital, also asked what had happened and petitioner informed her that he had bathed Chloe and put her to bed.  When asked if anything out of the ordinary had happened the petitioner stated that "Everything was fine.  Everything is fine. Just bathed her and put her in the bed." Tr. 389-91.

Chloe went into cardiorespiratory arrest and a code was called.  Registered nurse Angela Godbold secured a specialized system used in the resuscitation of children, then intubated and began an IV on the child. Tr. 368-69, 372.  As CPR was begun, a sweep of the child's mouth was done and bruising was found inside of her mouth, along the top of the gum

line and frenulum, the tendon that connects the lip to the jaw.  The injury was described as usually being caused by the pushing of something large into the mouth.  Tr. 395, 405.

The medical personnel managed to restore Chloe's pulse and began to better notice the bruising to her inner thighs, lips and forehead as well as to the inside of her mouth.  Tr. 374-75, 381, 394.  As Chloe's diaper was removed to attempt to take her temperature the medical staff was shocked to find her rectum gaping open, described as the size of a quarter, approximately an inch in diameter. Tr. 392.  Also observed was the lack of muscle tone to the child's rectum which allowed for a liquidy oozing of fluid mixed with stool, and bruising in the rectal, perineum and vaginal areas. Tr.393, 406.  At trial, each of the medical providers for Chloe was shown an autopsy photograph of the baby's rectum.  Each medical person testified the picture did not present the real life injury they observed as larger and more gruesome in nature than was depicted in the photograph.  The consistent testimony of the medical personnel was that the injury to Chloe's rectum was indicative of sexual penetration and abuse caused by the forcible insertion of a foreign object into her rectum.  Tr. 393, 397, 407, 418.

Despite the efforts of the medical staff, Chloe's condition began to deteriorate.  Chloe had bled so much that she developed a brain herniation, wherein the brain swells.  She also developed rhinorrhea, "which is leakage of clear cerebral spinal fluid out of the nares or nose."  Tr. 382-83.  The fluid surrounding her brain was now leaking from her ears and nostrils. Tr. 420.

Dr. Dar found Chloe's pupils to be fixed and dilated, an indication of brain death; she also noticed retinal tears or hemorrhages in Chloe's eyes, an indication of shaken baby syndrome.  Tr. 414-16.  According to the attending physicians there is nothing else that causes such hemorrhages other than shaken baby syndrome.407-08, 416.

Chloe was kept on the ventilator for a while longer until the damage to her brain caused her to "bleed out".  Tr. 365.  According to the medical staff, Chloe, "just started to swell [...] Literally swell.  Her face, her head, everything just - it was like it blew out from the inside out and it just caused this actual visual swelling of her head."  Tr. 408.  This type of bleeding, "just fills your face and it just looked like a vacuum–they had turned an air hose on and just blew up her face is what it looked like."  Tr. 364.  Dr. Patterson noted that, "at that point, we lost everything.  There was nothing left, and it was shortly after that the code was called."  Tr. 408.  Dr. Dar, Chloe's pediatrician, testified that Chloe simply, "exploded.  At that point, there is no point in saving it."  Tr. 420.  At that time, Dr. Dar pronounced Chloe dead.

Amy Winter, a DNA expert presented by the State, testified that no traces of semen were found in Chloe's mouth, vagina or rectum. Tr. 535.  Dr. Steven Hayne, pathologist for the Department of Public Safety, conducted Chloe's autopsy.  His examination revealed the finding of numerous bruises to the child's body, internally and externally, and to the violent shaking that caused her death as well as the conclusion that her rectum had been penetrated with an object. Tr. 545-46,551,557-58.

16

### 3.  Scope Of Review

Petitioner filed his writ of habeas corpus with this Court on April 10, 2009.  As stated above, because this petition was filed after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply with full force to this petition.  *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997); *Williams v. Cain*, 125 F. 3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective death Penalty Act of 1996 (AEDPA), Pub.L.No.104-132, 110 Stat.1214 (1996), we apply the standard of review embodied in the AEDPA.  *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).").  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Any claims that are not barred were fully addressed on the merits by the Mississippi Supreme Court on direct appeal and/or on state post-conviction review.  The resolution of the merits of these claims do not represent a decision that is contrary to or an unreasonable application of clearly established United States Supreme Court precedent as announced by the United States Supreme Court.  Therefore, under the standards of review found in the AEDPA, habeas relief cannot be granted with respect to these claims.

The most sweeping change provided in the AEDPA is found in Section 104(3) codified in 28 U.S.C. § 2254(d).  This subsection provides as follows:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State Court shall not be granted with

respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Thus, Havard's claims involving mixed questions of law and fact are governed by the dictates of § 2254 (d), which holds that a federal court cannot grant habeas relief unless it determines that the state court's decision involved an unreasonable application of the law to the facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Moore v. Johnson,* 101 F.3d 1069, 1075-76 (5th Cir. 1996) (*citing Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996)).[1]

This "unreasonable application" standard of review of state court decisions does not mean that a federal court may grant habeas relief based on a simple disagreement with the state court decision; such a standard would amount to nothing more than a de novo review. *Drinkard*, 97 F.3d at 768. Instead, a federal habeas court can grant habeas relief only if the state court's decision was unreasonable. In *Williams v. Taylor*, *supra*, the Supreme Court held:

---

[1]While *Moore* and *Drinkard* incorrectly applied the AEDPA retroactively to habeas corpus petitions pending prior to its enactment, the manner in which the AEDPA will be applied in a proper case is controlling on this case. *McBride v. Johnson,* 118 F.3d 432, 436 (5th Cir. 1997).

18

Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgement that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

529 U.S. at 411.

The Court further stated in Williams,

In sum, § 2254(d)(1) places a new constraint on the power of the federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in the state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause. A federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies theat principle to the fact's of the prisoner's case.

529 U.S. at 412-413.

"In effect, a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal." *Mata v. Johnson*, 99 F.3d 1261, 1268 (5th Cir. 1996), vacated in part on other grounds, 105 F.3d 209 (5th Cir. 1997).

Havard has failed to demonstrate how, and respondents assert he cannot show, the resolution of the claims raised on direct appeal or state post-conviction review "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal

19

law, as determined by the Supreme Court of the United States" at the time of the direct appeal and post-conviction review litigation.  Further, any claims of ineffective assistance of counsel being questions of mixed law and facts do not present decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.  Havard has not stated a claim on which relief can be granted.

The long standing requirement of deference to factual findings made by state courts remains intact in the amendments to § 2254.  Section 2254(e) reads:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

However, the AEDPA changed the standard of proof that a petitioner must adduce to rebut the presumption of correctness of state court findings of fact.  The standard is no longer a preponderance of the evidence standard, but the higher standard of clear and convincing evidence.  Havard cannot meet this burden to overcome the findings of fact made by the State court's clear and convincing evidence.  *See Patterson v. Dretke,* 370 F.3d 480, 484 (5th Cir. 2004); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004).

In cases governed by the AEDPA, 28 U.S.C. § 2254, the analysis differs depending upon whether the issue is one of law, fact, or both.  *See Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996).  For questions of fact, habeas relief may be granted only if the Court finds the state court made a determination of fact which was unreasonable in light of the

evidence presented to it.  *See* 28 U.S.C. § 2254(d)(2); *Drinkard*, 97 F.3d at 767-68.  When

reviewing such factual determinations, the Court must presume correct factual findings of

the state court, unless the petitioner "rebut[s] the presumption of correctness by clear and

convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson*, 112 F.3d 823, 824-

25 (5ᵗʰ Cir. 1997).  When considering question of law, on the other hand, this Court may

grant habeas relief only if the state court's determination of law is contrary to "clearly

established" Supreme Court precedent.  *See* U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 768.

The Fifth Circuit, in *Jones v. Dretke*, 375 F.3d 352 (5ᵗʰ Cir. 2004), explained this

requirement, stating:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim - (1) resulted in a decision
> that was contrary to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme Court of the United
> States; . . . 28 U.S.C. § 2254(d) (emphasis added).  The Supreme Court,
> interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to
> this Court's precedent if the State court confronts facts that are materially
> indistinguishable from a relevant Supreme Court precedent and arrives at a
> result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.1495,
> 146 L.Ed. 2d 389 (2000).  In order to find that a state adjudication is
> objectively unreasonable, "the state court's application [of federal law] must
> be more than merely incorrect." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5ᵗʰ
> Cir. 2003) (enbanc).

375 F.3d at 353-354.

Thus, the state court resolution of a claim must "not only be erroneous, but objectively

unreasonable" in order for the habeas relief to be granted. *Yarborough v. Alvarado*, 541 U.S.

652, 124 S.Ct 2140, 2150 (2004); *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 1832

(2004); *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12 (2003), *Yarborough v. Gentry*, 540

U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 76, 123

S.Ct. 1166, 1175 (2003); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000).  In *Holland v. Jackson*, 542 U.S. 649, 124 S.Ct. 2736 (2004), the United States

Supreme Court gave the federal habeas courts the following admonition:

> As we explained in *Viscotti*, § 2254(d) requires that "state-court decisions be
> given the benefit of the doubt." *Id*. at 24, S.Ct. 357.  "[R]eadiness to attribute
> error is inconsistent with the presumption that state courts know and follow the
> law." *Ibid*.  The Sixth Circuit ignored those prescriptions.

> 124 S.Ct. at 2739.

*See Woodford v. Viscotti*, 537 U.S. 19, 123 S.Ct. 357 (2002).

Looking to mixed questions - that is, those containing issues of law and fact - the Fifth

Circuit held in *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004):

> "Section 2254(d)(1) provides the standard of review for questions of law and
> mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th
> Cir. 2000).  A state court's decision is "contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States . . . if
> the state court arrives at a conclusion opposite to that reached by th[e] Court
> on a question of law or if the state court decides a case differently than th[e]
> Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,
> 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A decision
> "involve[s] an unreasonable application of [ ] clearly established Federal law,
> as determined by the Supreme Court of the United States . . . if the state court
> identifies the correct governing legal principle from th[e] Court's decisions but
> unreasonable applies that principle to the facts of the prisoner's case." *Id*. at
> 413, 120 S.Ct. 1495.

> 370 F.3d at 483-84.

*See Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.389 (2000); *Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002); *Carter v. Johnson*, 110 F.3d 1098, 1106-08 (5th Cir.) ("With a mixed question of law and fact, the facts are presumed correct and then the law is reviewed for reasonableness, not de novo."). These are the standards that must be applied by this Court in determining the claims made in this case.

Habeas relief generally may not be premised on rules of constitutional law that have yet to be announced or that were announced after the challenged conviction became final. *See Teague v. Lane*, 489 U.S. 288, 305-07, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989). See also *Schiro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519 (2004); *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504 (2004). In explaining what rules are to be retroactively applied the United States Supreme Court, in *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), held:

> The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.[4] *We thus conclude that a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive.*[5]

_____

FN4.  Similarly, the Supreme Court does not make a rule retroactive through dictum, which is not binding. *Cf. Seminole Tribe of Fla. V. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1144, 134 L.Ed.2d 252 (1996) (contrasting dictum with holdings, which include the final disposition of a case as well as the preceding determinations "*necessary* to that result" (emphasis added)).

FN5.  Tyler argues that defining "made" to mean "held" would create an

anomaly: When it is obvious that a rule should be retroactive, the courts of appeals will not be in conflict, and this Court will never decide to hear the case and will never make the rule retroactive. Thus, Tyler concludes, we should construe § 2244(b)(2)(A) to allow for retroactive application whenever the "principles" of our decisions, as interpreted by the courts of appeals, indicate that retroactivity is appropriate. This argument is flawed, however. First, even if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of new rules, we do not have license to question the decision on policy grounds. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Second, the "anomalous" result that Tyler predicts is speculative at best, because AEDPA does not limit our decision to grant certiorari to cases in which the courts of appeals have reached divergent results.

533 U.S. at 663, 121 S.Ct. at 2482 [Emphasis added.]

Thus, no new rule can be retroactively applied unless the Supreme Court has specifically held it to have retroactive application.

Further, even if the Court finds error in some aspect of the case, before the Court can grant habeas relief, the Court must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S.966, 119 S.Ct 413, 142 L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis of whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

Basically, in order for habeas relief to be granted to petitioner, this Court must find that the State court resolution of the claims raised were contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

24

Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.1495, 146 L.Ed.2d 389 (2000); *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).

Respondents would further point out that the petitioner is not entitled to an evidentiary hearing on any of the claims presented in this petition.  The AEDPA provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Thus any factual basis of Havard's claims not developed in the State court proceedings do not fall into either of the exceptions noted by § 2254.  Havard does not present to this Court anything new for determination.  He contends that this Court should conduct an evidentiary hearing concerning the factual allegations raised in the petition.  Such hearing would be contrary to the dictates of the AEDPA.  Petitioner is not entitled to an evidentiary hearing to further develop facts not developed at trial, on direct appeal or state-post conviction review.

Further, claims Havard presents here were held to be procedurally barred from consideration on direct appeal or state post-conviction review.  Thus, this Court is similarly

25

barred from consideration of these claims as they rest on the adequate and independent state law ground of procedural bar or waiver. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 1151 L.Ed.2d 706 (1991); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Further, in those instances where the State court has imposed a procedural bar and then gone on to address the merits of the claim, the procedural bar must be recognized by this Court as a bar to consideration of the merits of that claim. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the United States Supreme Court held:

> . . . Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125, n. 28, 102 S.Ct.1558, 1570, n. 28, 71 L.Ed.2d 783 (1982), it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane, supra*, at 298, 109 S.Ct. at1068-1069; *Isaac, supra*, at 125, n. 28, 129, 102 S.Ct. at 1570, n.28, 1572; *Wainwright v. Sykes*, 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-2509, 53 L.Ed.2d 594 (1997).

518 U.S. at 161-162.

Earlier in *Teague v. Lane*, 489 U.S. 288 (1989), the Court held:

26

. . . "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived.'" *People v. Gaines*, 105 Ill.2d 79, 87-88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984) (citation omitted), cert. denied, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The default prevents petitioner from raising the Swain claim in collateral proceedings under the Illinois Post-Conviction Act, Ill.Rev.Stat., ch. 38, ¶ 122-1 *et seq.* (1987), unless fundamental fairness requires that the default be overlooked. *People v. Brown*, 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972).

The fundamental fairness exception is a narrow one, and has been applied in limited circumstances. Compare *People v. Goerger*, 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972) (improper instruction on reasonable doubt "does not constitute such fundamental unfairness as to obviate the *res judicata* and waiver doctrines"), with *People v. Ikerd*, 47 Ill.2d 211, 212, 265 N.E.2d 120, 121 (1970) (fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal"), and *People v. Hamby*, 32 Ill.2d 291, 294-295, 205 N.E.2d 456, 458 (1965) (fundamental fairness exception applies to claims that defendant asked counsel to raise on direct appeal). It is clear that collateral relief would be unavailable to petitioner. *See People v. Beamon*, 31 Ill.App.3d 145, 145-146, 333 N.E.2d 575, 575-576 (1975) (abstract of decision) (not invoking fundamental fairness exception and holding that *Swain* claim not raised on direct appeal could not be raised for the first time in collateral proceedings). As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to the *Swain* claim. See *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28, 102 S.Ct. 1558, 1570-1571, n. 28, 71 L.Ed.2d 783 (1982); *United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1385-1386 (CA7 1974).

Under *Wainwright v. Sykes*, 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977), petitioner is barred from raising the *Swain* claim in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom. See *Engle v. Isaac, supra*, 456 U.S., at 113-114, 117, 124-135, 102 S.Ct., at 1564-1565, 1566, 1570-1576 (applying procedural default rule to claim that had never been raised in state court). Petitioner does not attempt to show cause for his default. Instead, he argues that the claim is not barred because it was addressed by the Illinois Appellate Court. Cf. *Caldwell v. Mississippi*, 472 U.S. 320, 327-328, 105 S.Ct. 2633, 2638-2639, 86 L.Ed.2d 231 (1985). We cannot agree with the petitioner's

argument.  The Illinois Appellate Court rejected petitioner's Sixth Amendment
fair cross section claim *without* mentioning the Equal Protection Clause on
which Swain was based or discussing whether Swain allows a prosecutor to be
questioned about his use of peremptory challenges once he volunteers an
explanation.  See *People v. Teague*, 108 Ill.App.3d, at 895-896, 64 Ill.Dec., at
405, 439 N.E.2d, at 1070.  Accordingly, we hold that petitioner's *Swain* claim
is procedurally barred, and do not address its merits.

Our application of the procedural default rule here is consistent with
*Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308,
(1989), which holds that a "procedural default does not bar consideration of
a federal claim on either direct or habeas review unless the last state court
rendering a judgment in the case  'clearly and expressly'  states that its
judgment rests on a state procedural bar" (citations and internal quotations
omitted).  The rule announced in *Harris V. Reed* assumes that a state court has
had the opportunity to address a claim that is later raised in a federal habeas
proceeding.  It is simply inapplicable in a case such as this one, where the
claim was never presented to the state courts.  *See id.*, at 268-270, 109 S.Ct.,
at 1046-1047 (O'CONNOR, J., concurring).

489 U.S. at 297-299.

All of this is to say that any claim that has not been fairly presented to the state courts is

unexhausted.  Under the provisions of § 99-39-5 (2), and § 99-39-27 (9), petitioner cannot

now exhaust these claims.  Therefore, the Court must hold any such claims to be procedurally

barred from consideration on federal habeas review.

Finally, it appears the claims petitioner is presenting to Court have been presented to

the State courts.  If after further review of the supporting memorandum it is discovered that

petitioner is presenting claims not presented to the state courts, respondents reserve the right

to contend that any such claims are not exhausted for the purposes of habeas review.  The

respondent would submit that the resolution of the claims presented to the Mississippi

28

Supreme Court do not represent decisions that are contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court, nor do they represent an unreasonable determination of the facts as shown by the state court record. Havard is entitled to no habeas relief.

WHEREFORE, PREMISES CONSIDERED, respondents respectfully move this Court to deny the requested relief and dismiss the petition for writ of habeas corpus with prejudice. Also, respondents would assert that petitioner is not entitled to discovery or an evidentiary hearing. Further, respondents would assert that any request for a certificate of appealability to appeal to the Fifth Circuit should be denied.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**PAT MCNAMARA**
SPECIAL ASSISTANT ATTORNEY GENERAL
Miss. Bar No.  99838
(*Counsel of Record*)

BY:   s/ **PAT MCNAMARA**

OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680

## CERTIFICATE OF SERVICE

This is to certify that I, Pat McNamara, Special Assistant Attorney General for the State of Mississippi, have electronically forwarded the foregoing ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

        Mark D. Jicka, Esquire
        WATKINS & EAGER
        Post Office Box 650
        Jackson, Mississippi 39205

        Graham P. Carner, Esquire
        WATKINS & EAGER
        Post Office Box 650
        Jackson, Mississippi 39205

This the 8th day of May, 2009.

                    s/ **PAT MCNAMARA**