**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**JEFFREY HAVARD**                                                            **PETITIONER**

**V.**                                                      **CIVIL ACTION NO.: 5:08cv275-KS**

**CHRISTOPHER EPPS, et al**                                            **RESPONDENTS**

_____

**PETITIONER'S REPLY TO RESPONDENTS' ANSWER**
_____

Petitioner, Jeffrey Havard, by and through his undersigned counsel and pursuant to Rule 5(e) of the Rules Governing Section 2254 Cases in the United States District Courts ("the Rules"), files this Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Docket Entry # 11).  At the outset, Petitioner rebuts several factual matters addressed in Respondents' Answer, and then moves on to demonstrate the inadequacy of the Answer.  Petitioner then addresses the Respondents' assertion of various procedural defenses, including the alleged non-exhaustion of four grounds for relief, and various matters pertaining to the Respondents' discussion of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Pursuant to the Court's Order of May 13, 2009 (Docket Entry # 14), Petitioner will file a brief addressing the merits of his Petition by July 13, 2009.

## I.    REBUTTAL OF CERTAIN FACTUAL MATTERS

This Reply is chiefly devoted to responding to various procedural issues raised by Respondents' Answer.  However, Petitioner will briefly discuss at the outset several factual matters raised by Respondents.  While Petitioner stands on the facts as set forth in his Petition, and will more fully set forth those facts in his upcoming merits brief, there are several key factual distortions asserted by Respondents in their Answer that merit discussion now.

To begin, Respondents point to the testimony of Chloe Britt's mother, Rebecca Britt, where she said that she was only aware that Petitioner had bathed Chloe after the fact and that it was "unusual" for Petitioner to bathe Chloe. (Answer at p. 13). However, Petitioner was highly involved in caring for Chloe. More specifically, emergency room nurse Patricia Murphy testified at trial that Rebecca Britt told her at the hospital that the plan on the evening in question was for Petitioner "to bathe the baby and put her to bed." (Tr. at p. 390). Murphy later echoed that testimony by stating that Britt told her "that when she [Britt] left to go to the store, he [Petitioner] was supposed to give her a bath and put her to bed while she was gone." (Tr. at p. 399). The suggestion that Petitioner's bathing of Chloe was done without the consent or foreknowledge of her mother or that Petitioner had never before expressed any interest in participating in the care of Chloe is designed to infer some sort of nefarious purpose on the part of Petitioner, but has no evidentiary basis other than the say-so of Rebecca Britt, which is contradicted by statements she made to nurse Patricia Murphy.

Respondents then point to injuries to Chloe's mouth, and particularly to her frenulum, and state that such injuries are usually "caused by the pushing of something large into the mouth." (Answer at pp. 14-15). At trial, the State advocated that the injuries to Chloe's frenulum were additional evidence of sexual abuse. However, the trial court ruled on a motion for directed verdict that the evidence was insufficient to reach a jury issue on that point. The Court found that the mouth injuries "could have been caused by some type of external force, fall,[1] or something coming into contact with the victim's mouth . . . .The evidence as to the mouth is clearly not sufficient to sustain

---

[1] As noted in the Petition, Petitioner states that he dropped Chloe after bathing her, and that Chloe struck the nearby toilet.

a charge or to go to the jury on a charge of penetration of the child's mouth."[2]  (Tr. at p. 569).

Indeed, the Court's finding is consistent with the Declaration of Dr. Steven T. Hayne, which states

that the frenulum injury "has numerous potential causes," none of which can be "determined with

certainty."  *See* Pet. Exh. "A," Declaration of Hayne at ¶ 6.  That Respondents are still clinging to

this clearly irrelevant, unsupported allegation–an allegation that was excluded from jury

consideration at trial due to insufficiency of evidentiary support–is telling.  Respondents are clearly

willing to go to great lengths to support the tainted conviction and sentence that Petitioner is

challenging in this proceeding.

Respondents then describe alleged "bruising in the rectal, perineum, and vaginal areas" in

support of the sexual battery allegation, which alone made this a capital case.  (Answer at p. 15).

However, Dr. Hayne's autopsy of Chloe Britt–conducted only 19 hours after her death–noted only

a one centimeter contusion on the child's anus.  *See* Pet. Exh. "A," Declaration of Hayne at ¶ 6.  Dr.

Hayne states that "[t]his contusion could have a variety of causes, and is not sufficient in and of itself

to determine that a sexual assault occurred."  *See* Pet. Exh. "A," Declaration of Hayne at ¶ 6.  No

other bruising in the anal, rectal, or genital areas was found by Dr. Hayne.  Dr. Hayne further states

that the autopsy revealed "no tears of her rectum, anus, anal sphincter, or perineum."  *See* Pet. Exh.

"A," Declaration of Hayne at ¶ 7.  Once again, the State is distorting the medical evidence to support

an unreliable and unfair conviction and sentence.

Respondents further emphasize that "[t]he consistent testimony of the medical personnel was

the injury to Chloe's rectum was indicative of sexual penetration and abuse caused by the forcible

---

[2] This factual finding of the trial court is entitled to a presumption of correctness unless Respondents
can show that the finding was objectively unreasonable.

insertion of a foreign object into her rectum." (Answer at p. 15).  This assertion is also contradicted

by the available medical evidence.   While some medical providers were improperly allowed to offer

opinions (despite the fact that they were neither tendered nor qualified as expert witnesses) that the

conditions they observed must have been caused by anal sexual abuse, the only expert proffered by

the State at trial on this issue, Dr. Hayne, testified to no such thing.  His opinions are made clear in

his Declaration, in which he states that he found only a one centimeter contusion on Chloe's anus

(not her rectum, which is an entirely different part of human anatomy), and that this contusion "could

have a variety of causes, and is not sufficient in and of itself to determine that a sexual assault

occurred."  *See* Pet. Exh. "A," Declaration of Hayne at ¶ 6.  With respect to the observed anal

dilation, Dr. Hayne states that "[d]ilated anal sphincters may be seen on persons who have died, as

well on a person prior to death without significant brain function.[3]  My experience as well as the

medical literature recognize that a dilated anal sphincter is not, on its own, evidence of anal sexual

abuse, but must be supported by other evidence."  *See* Pet. Exh. "A," Declaration of Hayne at ¶ 9.

For these and other reasons, Dr. Hayne states that he cannot conclude "to a reasonable degree of

medical certainty that she [Chloe] was sexually assaulted."  *See* Pet. Exh. "A," Declaration of Hayne

at ¶ 10.  This paints a vastly different factual picture than that offered by Respondents in their

Answer.

---

[3] Even Respondents admit, as they must, that Chloe was "not breathing and had turned blue," "had no pulse and was cyanotic", experienced "cardiorespiratory arrest," and was "brain dead," all  prior to time that the dilated anus was first observed by medical personnel.  (*See* Answer at pp. 14-16).  Comparing that evidence with Dr. Hayne's opinion makes clear that there are credible, alternative, and non-criminal explanations for the dilated anus.   That this condition is "indicative of sexual penetration" is pure speculation, and contradicted by the facts and medical science.

Further seeking to support Petitioner's untenable conviction and death sentence, Respondents conclude their factual recitation with a long discussion of Shaken Baby Syndrome, which has no bearing on the issues presented by Petitioner.  While Dr. Hayne's autopsy did find that the cause of Chloe Britt's death was "[c]onsistent with Shaken Baby Syndrome," Petitioner was not tried on child abuse charges.  His conviction and death sentence are based solely on the allegation of sexual battery.  While Petitioner was initially indicted for capital murder during the course of sexual battery and during the course of felonious child abuse, the State, on the eve of trial, amended the indictment and removed the child abuse charge.  Thus, if there was no sexual battery, Petitioner's conviction and death sentence are both invalid and unconstitutional.  The discussion of Shaken Baby Syndrome is merely an attempt to distract from the real issues in this case: that no sexual battery occurred, and that Petitioner did not receive a fair opportunity to present this to the jury, due to multiple, egregious failings by his attorneys, errors by the trial court, and prosecutorial misconduct (as set forth in the Petition).  When this case is viewed in the proper factual context, it is clear that Petitioner's conviction of capital murder and sentence of death cannot stand, and that he is entitled to the relief requested in his Petition.

## II.    RESPONDENTS' ANSWER IS INADEQUATE

Petitioner filed his Petition for Writ of Habeas Corpus on April 10, 2009.  The Petition is 61 pages in length and sets forth fifteen distinct grounds for relief.  Respondents filed their Answer on May 8, 2009.  The Answer spans 30 pages, and only a small portion of the Answer could generously be characterized as even vaguely addressing Petitioner's allegations or identifying procedural defenses; the remainder of the Answer contains a generalized discussion of federal habeas principles, some of which have bearing on this matter and some of which do not.  In fact, Respondents simply

deny every aspect of each of Petitioner's claims, despite the fact that they were set forth with particularity as required by the Rules.  As demonstrated below, Respondents' Answer does not comply with the Rules.  As a result, Respondents have forfeited their rights to contest the specific allegations contained in the Petition and to raise any procedural defenses that may have been available to them.  Simply put, Respondents have had their opportunity to respond to the detailed allegations of the Petition, and have failed to do so.

A.     Respondents' Answer Fails to Comply with Applicable Rules

Rule 5(b) of the Rules provides as follows:

> Contents: Addressing the allegations; stating a bar.  The answer must address the allegations in the petition.  In addition, it must state whether any claim in the petition is barred by failure to exhaust State remedies, a procedural bar, non-retroactivity, or a statute of limitations.

The Advisory Committee notes on Rule 5 add, in relevant part, the following:[4]

> The answer plays an obviously important role in a habeas proceeding:
>
> The return serves several important functions:  It permits the court and the parties to uncover quickly the disputed issues; it may reveal to the petitioner's attorney grounds for release that the petitioner did not know; and it may demonstrate that the petitioner's claim is wholly without merit.  Developments in the Law - Federal Habeas Corpus, Harv. L. Rev. 1083, 1178 (1970).
>
> The answer must respond to the allegations of the petition...the requirement of the proposed rule that the "answer shall respond to the allegations of the petition" is intended to ensure that a responsive pleading will be filed and thus the functions of the answer served. The answer must also state whether the petitioner has exhausted his state remedies...the attorney general has both the legal expertise and

---

[4]"In the absence of a clear legislative mandate, the Advisory Committee notes provide a reliable source of insight into the meaning of a rule."  *United States v. Vonn*, 535 US 55, 64 n. 6 (2002).

6

> access to the record and thus is in a much better position to inform the
> court on the matter of exhaustion of state remedies.

Advisory Committee Notes, 1976 adoption; *See also* Advisory Committee Notes, 2004 Amendments ("Rule 5(b) has been amended to require that the answer address not only failure to exhaust state remedies, but also procedural bars, non-retroactivity, and any statute of limitations...the Committee believes that the explicit mention of those issues in the Rule conforms to current case law and statutory provisions.").

Rule 5 and the accompanying notes thus establish two requirements essential to a proper answer in a habeas case: (1) that the answer "address the allegations in the petition" and (2) that the answer "state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or statute of limitations."  As the notes make clear, these requirements exist to enable "the court and the parties to uncover quickly the disputed issues" such that the "functions of the answer [are] fully served."  Respondents' submission in this case advances none of these objectives.

Respondents' Answer does not even pretend to meet the requirement that it "address the allegations in the petition."  The Respondents' answer simply denies the entirety of the claims set forth in the Petition, despite the fact that Petitioner's claims were pled with particularity.  Apart from a recitation of the "Factual Background" of the case (which presents several distortions, as described in Section I. above), the Respondents' Answer makes no mention at all of either the facts or legal theories set forth in the Petition.  In so doing, Respondents have not aided judicial economy, as they have not narrowed the issues in dispute as contemplated by the Rules.

While the Answer does contain a general denial of all of Petitioner's claims, such a general denial is insufficient for at least two reasons.  First, it plainly fails to "address the allegations in the petition" in the manner contemplated by Rule 5(b) of the Rules.  Second, it does not comply with Rule 8(b) of the Federal Rules of Civil Procedure, which mandates that "[d]enials shall fairly meet the substance of the averments denied," and cautions that a pleader may only rely upon broad denials like the one contained in the Respondents' Answer when he or she "intends in good faith to controvert all the averments of the preceding pleading..."[5]  Given that many of the allegations set forth in the Petition are drawn directly from the trial record or other incontrovertible sources, it is inconceivable that Respondents intend to deny every single allegation contained in the Petition.

B.      Respondents' Insufficient Answer Results in Petitioner's Allegations Being Admitted

Respondents' failure to properly dispute any of Petitioner's allegations has consequences. Pursuant to Federal Rule of Civil Procedure 8(d), "[a]verments in a pleading to which a responsive pleading is required...are admitted when not denied in the responsive pleading."  Here, Respondents' failure to deny any of Petitioner's factual and legal allegations results in the forfeiture of their right to do so and requires that Petitioner's allegations be deemed admitted.  *See e.g., Weiner v. Bock*, 386 F.Supp. 2d 717, 719 (E.D. Mich. 2005) (describing an earlier order in that case in which "[t]he court denied the respondent's motion to dismiss on statute of limitations grounds and finding that the respondent forfeited her right to contest the merits, since she failed to comply with Rule 5 of the Rules Governing Section 2255 Cases in the federal courts [which, similar to the rules governing this

---

[5]"The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.

case, require that the answer respond to the allegations of the petition] and a previous order to answer the petition.").   In sum, Respondents' failure to specifically (or even generally) address the allegations set forth in the Petition requires that those allegations be deemed admitted.  Moreover, Respondents should not be afforded any additional opportunity to prepare a proper answer.

## III.   GENERAL OVERVIEW OF RESPONDENTS' ANSWER REGARDING PROCEDURAL DEFENSES

As set forth above, Rule 5(b) of the Rules also requires that the Answer "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations."  With respect to defenses such as procedural default, Respondents' Answer is deficient.  With respect to the defense of non-exhaustion, Respondents are contradictory, as they state that certain claims have not been exhausted and then turn around and assert that Petitioner's claims are fully exhausted.[6]  The contradictory nature of the Answer is further underscored by the fact that Respondents state that this Court has jurisdiction over this matter on page 1, but then assert that this Court lacks jurisdiction on page 3.  Pleading in such a manner violates both the letter and the spirit of the pleading rules, and Respondents should be deemed to have waived their defenses.  Further, any procedural defenses not raised by Respondents in the Answer have been waived, for failure to raise them at the first opportunity.

---

[6]Respondents also refer to the non-retroactivity doctrine formulated in *Teague v. Lane*, 489 U.S. 288, 305-07 (1989).  (Answer at 23-24).  Respondents, however, do not assert that *Teague* bars any particular ground for relief.  Because Respondents' invocation of *Teague* is insufficient, the Court may find that Respondents have waived this defense.  *See Blankenship v. Johnson,* 118 F.3d 312, 316 (5th Cir. 1997).  Respondents also refer to the "adequate and independent state law grounds" doctrine, but again fail to identify any specific claim that is barred under that doctrine.  This defense has also been waived.

A.    The State's Assertion of Procedural Default is Insufficient

Respondents claim that Claim II (prosecutorial misconduct during closing argument) and Claim III (introduction of improper victim impact testimony) are procedurally barred for failure to offer a contemporaneous objection.  However, a state rule of procedure is not be enforceable in federal court unless the state court consistently applies that rule to virtually all similarly situated defendants.  *Johnson v. Mississippi*, 486 U.S. 578 (1988); *Lowe v. Scott*, 48 F.3d 873, 876 (5th Cir. 1995).  Thus, in *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992), the Fifth Circuit reached the merits of a challenge to jury instructions regarding Mississippi's "especially heinous, atrocious, or cruel" aggravating circumstance after noting that it had "little trouble finding inconsistent application of the contemporaneous objection bar in this context." *Id. See also Rosales v. Dretke*, 444 F.3d 703 (5th Cir. 2006).

In addition, when "fundamental rights" are involved, the Mississippi Supreme Court does not apply the rule consistently.  In fact, the Mississippi Supreme Court has held that it will not rigidly enforce the contemporaneous objection rule when there is an alleged violation of a "fundamental right." "It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989); *see also Seeling v. State*, 844 So. 2d 439, 445 (Miss. 2003) ("Fundamental rights in serious criminal cases rise above mere rules of procedure.") (quoting *Brooks v. State,* 209 Miss. 150, 155, 46 So. 2d 94, 97 (1950)); *Maston v. State,* 750 So. 2d 1234, 1237 (Miss. 1999) ("This Court has recognized an exception to procedural bars where a fundamental constitutional right is involved.").  Prosecutorial misconduct has been found to involve fundamental rights which allow a reviewing court to overlook a procedural bar.  *See, e.g., Payton v. State,* 785 So. 2d 267, 270 (Miss. 1999) ("[I]f the argument

10

is so inflammatory that the trial judge should have objected on his own motion the point may be considered."); *Randall v. State,* 806 So. 2d 185, 210 (Miss. 2001) ("in cases of prosecutorial misconduct, we have held 'this Court has not been constrained from considering the merits of the alleged prejudice by the fact that objections were made and sustained, or that no objections were made.'") (quoting *Mickell v. State,* 735 So. 2d 1031, 1035 (Miss. 1999)).

In addition, Petitioner raised in the state courts (and in his Petition) the fact that failure to offer a contemporaneous objection with respect to both Claim II and Claim III constituted ineffective assistance of counsel. This establishes sufficient "cause" for any purported default. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Ineffective assistance of trial counsel may constitute "cause" excusing a procedural default. *See, e.g., Murray*, 477 U.S. at 488.

Furthermore, if a state court has reached the merits of a claim on direct appeal and then declines to consider the merits in subsequent collateral proceedings, the claim should **not** be treated as procedurally barred in federal court. *See*, *e.g.*, *Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991); *Porter v. Gramley*, 112 F.3d 1308, 1316 (7th Cir. 1997) (state post-conviction court's refusal to hear claim on *res judicata* grounds does not bar federal habeas review; "[w]hen a state court invokes *res judicata*, it simply means that the state courts have already resolved the matter and want nothing more to do with it"); *Turner v. Williams*, 35 F.3d 872, 890 (4th Cir. 1994) (state court's *res judicata* rule is not a true procedural default rule, but is in the nature of collateral estoppel); *see also Williams v. Coyle*, 260 F.3d 684, 695-696 (6th Cir. 2001); *Lambright v. Stewart*, 241 F.3d 1201, 1203-1206

(9th Cir. 2001).  Thus, Respondents' argument that Claim XII is procedurally barred is also without merit.

The lack of specificity and confusing nature of Respondents' invocation of procedural defenses are insufficient under Rule 5(b).  It is well settled that these procedural defenses are subject to waiver if not raised by a respondent at the earliest opportunity.  *See, e.g., Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Gray v. Netherland,* 518 U.S. 152, 166 (1996) ("procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter'") (modification by the Court); *Emery v. Johnson*, 139 F.3d 191, 195 n.4 (5th Cir. 1998) ("If the state does not plead procedural default in the district court, it is waived"). A respondent can forfeit procedural defenses not only by failing to mention them at all, but also by failing to raise them with sufficient specificity or support them with adequate argument.  *See, e.g., Moore v. Quarterman*, 454 F.3d 484, 490 n.8 (5th Cir. 2006) (respondent waived defense that habeas claim was procedurally barred by offering no supporting argument other than that "the issue is certainly debatable"); *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) ("the warden's objection . . . was insufficient because she has not identified with specificity which statements are allegedly defaulted"; "Simply put, we cannot identify which statements the state contends are procedurally barred.  The warden's vague assertion of the procedural default defense is not sufficient to bar federal review"). *Cf. Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ( citing *Villanueva v. CNA Ins. Cos.,* 868 F.2d 684, 687 n.5 (5th Cir. 1989)) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").  Accordingly, Respondents have waived their procedural defenses by failing to adequately assert them.

B.  Underline All of Petitioner's Claims Have Been Exhausted, or Respondents Have Waived the Exhaustion Rule

At one point in their Answer, Respondents claim that "all of the claims in the petition have not previously been fairly presented to the courts below for consideration." (Answer at p. 2). Petitioner then sets forth three specific claims (Claim II, with respect to the ineffective assistance of counsel aspect of that claim; Claim III, with respect to the ineffective assistance of counsel aspect of that claim; and Claim XIV) that they claim have not been exhausted.  However, later in the Answer, Respondents state that "it appears the claims petitioner is presenting to the Court have been presented to the State courts." (Answer at p. 28).  Respondents' invocation of the exhaustion defense is thus subsequently revoked.  This type of contradictory pleading does not comply with Rule 5 and only serves to confuse the issues.  Accordingly, Respondents should be deemed to have waived the exhaustion defense.

Contrary to Respondents' assertion (or one of their assertions, at least), all of the claims presented in the Petition have been fully exhausted in state court.  With respect to the ineffective assistance of counsel aspect of Claim II, it was presented during Petitioner's direct appeal (S*ee* Original Brief of Appellant at Ground V, p. 20 n.6) and during his state post-conviction proceedings. (S*ee* Petition for Post-Conviction Relief With Exhibits at Ground VII, p. 70, ¶ 254).  With respect to the ineffective assistance of counsel aspect of Claim III, it was presented during Petitioner's direct appeal.  (*See* Original Brief of Appellant at Ground VI, p. 24 n. 7).  With respect to Claim XIV, it was presented during Petitioner's state post-conviction proceedings.  (S*ee* Petition for Post-Conviction Relief With Exhibits at Ground XIV, p. 83, ¶ 285).

Clearly, Respondents arguments of non-exhaustion are just plain wrong.  Furthermore, given the fact that Respondents have inadequately raised the non-exhaustion defense (by claiming contradictory positions), the defense should be deemed waived.  If, however, the defense is still viable and the Court finds that any of the three cited grounds have not been exhausted, Petitioner's non-exhaustion of those three claims should be excused by operation of exceptions to the exhaustion rule.  *See* 28 U.S.C. §2254(b)(1)(B).  Alternatively, should the Court determine that any of those three claims have not been exhausted, and no exception to the exhaustion rule applies, Petitioner requests that the Court stay these proceedings and hold them in abeyance pending state court proceedings to exhaust those claims.

## IV.     RESPONSE TO RESPONDENTS' DISCUSSION OF AEDPA

Respondents devote substantial portions of their Answer to matters of habeas corpus law and procedure under AEDPA.  While some sections of Respondents' Answer are clearly stock discussions of certain principles that have no bearing on this case, others present descriptions and characterizations of certain statutes and rules that may impact this Court's resolution of Petitioner's claims.  Because Respondents' Answer contains certain distortions of and misconceptions about these principles, Petitioner will begin by setting out a more accurate description of what they are and how they operate.  In his forthcoming brief on the merits, Petitioner will discuss in greater detail whether any of the provisions of AEDPA are applicable or whether they constrain this Court from granting relief.

### A.     The structure and function of 28 U.S.C. § 2254(d)

Although AEDPA introduced certain limitations on a federal court's authority to grant habeas relief, Respondents interpret its provisions as almost automatically precluding the grant of relief.

However, AEDPA's limitations on the grant of relief do not necessarily apply to all claims raised, nor do those provisions sweep as broadly as Respondents may wish. Under 2254(d), a federal court's ability to grant habeas corpus relief is subject to the following limitations:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was not adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As Respondents portray it, this Court need only ask whether, on their face, the Mississippi Supreme Court's decisions rejecting Petitioner's claims were contrary to federal law, or were somehow unreasonable, and if neither question can be readily answered in the affirmative, then relief must be summarily denied. Such a superficial review would be inconsistent, however, with the plain language of the statute and inconsistent with Supreme Court precedent applying the statute. Such a review would also vitiate the history and purposes of the writ of habeas corpus. As discussed below, a more detailed and exacting inquiry is not only permitted by 2254(d), but is in fact essential to the proper application of that provision.

The first step to properly understanding the function of 2254(d) is to recognize that it is concerned with limiting a federal court's authority to grant relief once a federal constitutional violation has been found to exist, not with attempting to influence the federal court's discharge of its Article III mandate to determine the existence vel non of constitutional error. *See, e.g.*, *Williams*

(Terry) v. Taylor, 529 U.S. 362, 412 (2000) (2254(d) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court") (emphasis added); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("The requirements for habeas relief established by 28 U.S.C. § 2254(d) are thus satisfied") (emphasis added).

That 2254(d) speaks to the availability of a remedy, rather than to finding the existence of an error for which a remedy might be warranted, is clear for at least two reasons. First, the opening clause of the statute – "An application for a writ of habeas corpus . . . shall not be granted" (emphasis added) – is an express direction to withhold the writ unless certain conditions are met, but says nothing that purports to modify the ways in which federal courts analyze or resolve constitutional questions, which must necessarily precede any consideration of a possible remedy. Second, when Congress created the limitation on relief in § 2254(d) as part of AEDPA, it made no changes to 2254(a), which confers federal habeas jurisdiction for the purpose of determining whether a habeas petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." Taken together, 2254(a) and (d) thus form a framework in which federal courts remain both authorized and obligated to determine the existence of constitutional violations in the first instance, but may no longer remedy such violations by issuing the writ of habeas corpus unless they further find one or more of the conditions enumerated in 2254(d)(1) or (2) to be satisfied. *See Gonzalez v. Crosby*, 125 S. Ct. 2641, 2648 n.4 (2005) (defining a "merits" decision in a habeas case as "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)").

16

This framework also explains why Congress set as a condition for the application of §
2254(d) a prior state court adjudication. If the state court adjudicated the claim, a federal court
should determine whether there is constitutional error and then – and only then – examine whether
a petitioner can overcome the limitations on the grant of relief in § 2254(d).  Thus, under the plain
language of the statute, § 2254(d)'s limitation on relief applies only to claims previously adjudicated
on the merits in state court proceedings. *Fisher v. Texas*, 169 F.3d 295, 299-300 (5th Cir. 1999).

If the State court did not address the merits of the claim, the limitations on relief of
2254(d)(1) and (2) are inapplicable and this Court's review is de novo. This is true if the merits were
not addressed because the issue was not presented in state court but the state has waived exhaustion,
*Lockhart v. Johnson*, 104 F.3d 54, 57-58 (5th Cir. 1997), the petitioner has established that
exhaustion is excused under 28 U.S.C. § 2254(b), or the petitioner has overcome any procedural
default by establishing cause and prejudice under *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).
*See, e.g., Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003) (cause and prejudice established
for failure to exhaust ineffective assistance of counsel claim in state court and the federal court held
that "AEDPA does not apply" and the claim had to be reviewed "de novo"). This is also the case if
the claim was presented to the state court, but the court failed to address the merits of the claim or
any required aspect of the legal analysis.  *See, e.g., Wiggins*, 539 U.S. at 534 ("[O]ur review is not
circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts
below reached this prong of the *Strickland [v. Washington*, 466 U.S. 668 (1984)] analysis");
*Rompilla v. Beard*, 125 S. Ct. 2456, 2467 (2005) (same); *Weeks v. Angelone*, 176 F.3d 249, 258-60
(4th Cir. 1999) ("When a petitioner has properly presented a claim to the state court but the state court

has not adjudicated the claim, . . . our review of questions of law and mixed questions of law and fact is *de novo*.").

With respect to the claims that the state court did address on the merits in state court, this Court must address the limitations on relief of 2254(d). "[C]learly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and may constitute a "series of precedents" establishing "the governing legal principle or principles," *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *see also Abdul-Kabir v. Quarterman,* 127 S. Ct. 1654, 2007 WL 1201582, *10 (U.S. Apr. 25, 2007) (conducting "careful review of our jurisprudence in this area" to determine the "firmly established" rule at issue). "[T]he relevant Supreme Court precedent need not be directly on point, but must provide a 'governing legal principle' and articulate specific considerations for the lower courts to follow when applying the precedent." *Quinn v. Haynes*, 234 F.3d 837, 844 (10th Cir. 2000). *See also Ryan v. Miller*, 303 F.3d 231, 248 (2nd Cir. 2002) ("[A]lthough the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established."); *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) ("[F]actually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns."). In other words, as the United States Court of Appeals for the Sixth Circuit observed in applying an analysis similar to *Quinn*, "The earth is not flat, nor does the sun revolve around it, but we do not need to be told that expressly by the Supreme Court in order for us to apply it in a case." *Taylor v. Withrow*, 288 F.3d 846, 853 (6th Cir. 2002).

18

A state court decision will be "contrary to" established Supreme Court precedent if the state court either "applies a rule that contradicts the governing law set forth" by the Supreme Court or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent." *Williams*, 529 U.S. at 405-06. A state court decision will be an "unreasonable application of" the Supreme Court's clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id*. at 407-08, or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," *id*. at 407. "An unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 410. Rather, a state court decision is unreasonable if the decision is "objectively unreasonable." *Id*. at 409.  If the state court's decision was contrary to or based on an unreasonable application of Supreme Court law, the federal court must evaluate the claim "de novo, without applying the deferential standard prescribed by § 2254(d)(1)." *Allen v. Lee*, 366 F.3d 319, 343 n.3 (4th Cir. 2004) (en banc). *See also Rose v. Lee*, 252 F.3d 676, 691 (4th Cir. 2000).  If a state court bases its decision on an inaccurate formulation of firmly established precedent "while ignoring the fundamental principles established by our most relevant precedents," its adjudication of a claim may result in a decision that is both "contrary to" and "involved an unreasonable application of, clearly established Federal law." *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 2007 WL 1201582, *14 (U.S.  Apr. 25, 2007).

Respondents are incorrect to suggest that "a reasonable good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal."  Answer at

19 (quoting *Mata v. Johnson*, 99 F.3d 1261, 1268 (1996)). In *Williams*, the Supreme Court unambiguously held that the question of the reasonableness of a state court's adjudication was an objective, not a subjective, inquiry. *Williams*, 529 U.S. at 409-10. Thus, the relevant question is not whether the state court acted in good faith but whether its treatment of a federal constitutional claim was objectively reasonable.

In sum, in conducting the required analysis, this Court must first determine whether Petitioner has established a constitutional violation. 28 U.S.C. § 2254(a). If a constitutional violation is found, but the state court did not adjudicate the claim on the merits in state court, this Court must grant relief and issue the writ. If a constitutional violation is found and the state court did adjudicate the merits of the claim, this Court must additionally determine whether the Mississippi Supreme Court's failure to recognize and remedy those violations can be attributed to one or more analytical mistakes falling within the categories enumerated in Section 2254(d)(1) or (2).[7] That federal habeas review of claims previously adjudicated on the merits in state court involves the sort of two-tiered analysis described above–as opposed to the superficial "contrary to"

---

[7]There is some contention about the proper application of the "unreasonable application" clause of § 2254(d)(1). In *Neal v. Puckett*, 286 F.3d 230, 244-247 (5th Cir. 2002) (en banc), the Fifth Circuit concluded that "our focus on the "unreasonable application" test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." At the same time, the Fifth Circuit acknowledged that "[c]ertain passages in the *Williams [v. Taylor]* decision could be read to support" the view that section 2254(d)'s "unreasonable application" standard refers to "the quality of the state court's analysis." *Id.* at 245-46. Although the Fifth Circuit's *en banc* decision is binding, Petitioner wishes to point out his objection to what he believes is an erroneous interpretation and application of both § 2254(d)(1) and *Williams*. In other cases, the Supreme Court has focused on the actual reasoning of the state court and not simply on the reasonableness of the ultimate conclusion. *See, e.g., Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 2007 WL 1201582 (U.S. Apr. 25, 2007) (finding that state court unreasonably applied clearly established law after noting that the state court ignored the significance of certain evidence and relied on an assumption that was not supported by precedent); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Price v. Vincent*, 123 S. Ct. 1848 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*).

or "reasonableness" review suggested by Respondents–is confirmed by the Supreme Court's decisions granting relief in cases governed by 2254(d).

For example, in *Williams*, the Court engaged in a thorough, detailed examination of the constitutional merits of the petitioner's ineffective assistance of counsel claim, and an equally thorough examination of the ways in which the Virginia Supreme Court's adjudication of that claim was both "contrary to" federal law (by applying the wrong constitutional rule to the petitioner's claim) and "involved an unreasonable application of" federal law (by, inter alia, failing to consider all of the evidence relevant to the claim). *See Williams*, 529 U.S. at 390-98. Likewise, in both *Rompilla* and *Wiggins*, the Court undertook its own detailed review of the merits of the petitioner's contention that trial counsel were ineffective for failing to adequately investigate, *Rompilla*, 125 S. Ct. at 2463-66; *Wiggins*, 539 U.S. at 519-27, and performed a careful analysis of the ways in which the state court's decision rejecting the petitioner's claim was based on an "unreasonable determination of the facts," and involved an "unreasonable application of" federal law.   *See Rompilla*, 125 S. Ct. at 2467; *Wiggins*, 539 U.S. at 527-534.

The Court took the same approach in *Miller-El v. Dretke*, 125 S. Ct. 2317 (2005), again conducting a painstaking evaluation of the merits of the petitioner's *Batson v. Kentucky*, 476 U.S. 79 (1986), claim before further concluding that the state court's rejection of that claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, such that federal habeas relief was appropriate.  More recently, in *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654 (2007), the Supreme Court found that the Texas state courts adjudicated claims that were contrary to and involved unreasonable applications of *Penry v. Lynaugh* 492 U.S. 302 (1989).  The Supreme Court carefully reviewed the reasoning of the state court and

found that the Texas courts had primarily relied on one case, *Graham v. Collins*, 506 U.S. 461 (1993), "to the exclusion of our other cases in this line of jurisprudence." More specifically, the Supreme Court found that the Texas state courts ignored the relevance of certain mitigating evidence and chided the state judge for relying on an assumption "that is neither reasonable nor supported by the *Penry* opinion." *Id*. at *15; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (state court adjudication can survive § 2254 (d)(1) only where "neither the reasoning nor the result of the state court decision contradicts" Supreme Court precedents).

In short, the question this Court must ask when considering Petitioner's claims for relief is not merely whether it can be said at a glance that the Mississippi Supreme Court's denials of relief were "contrary to" federal law, or somehow "unreasonable" in their treatment of the law or the facts. Rather, the questions are (a) whether Petitioner's constitutional rights have been violated and, if so, (b) whether the Mississippi Supreme Court's failure to recognize and remedy those violations can be attributed to one or more analytical mistakes set forth in Section 2254(d)(1) or (2).

B.     The evaluation of state court factual findings under AEDPA

Respondents suggest that state court factual determinations are effectively beyond review by this Court. (*See, e.g.*, Answer p. 20). ("Havard cannot meet this burden to overcome the findings of fact made by the State court's clear and convincing evidence."). This is clearly incorrect. As the Supreme Court demonstrated in *Wiggins*, and more recently in *Miller-El*, a faithful application of § 2254(d)(2) cannot be accomplished without looking beneath a state court's factual "findings" in order to assess the reasonableness of the conclusions reached by the state court in light of the evidence that was before that court. *Miller-El*, 125 S. Ct. at 2325; *Wiggins*, 539 U.S. at 528; *see also Guidry v. Dretke,* 397 F.3d 306, 328 (5th Cir. 2005) (granting relief in capital case where state court's

decision was based on factual finding that ignored countervailing record evidence; under "§ 2254(d)(2), the district court concluded properly that the state court's adjudication of the claim was based on an unreasonable determination of the facts"); *Childress v. Johnson*, 103 F.3d 1221, 1226 n.7 (5th Cir. 1997) ("While the measure of deference afforded state court factual findings is substantial, we note that it is not absolute. Section 2254(d)(2) authorizes issuance of the writ if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented'"); *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (§ 2254(d)(2) and (e)(1) "require meaningful federal court review of the evidentiary record considered by the state courts").

Moreover, while § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence," this presumption is likewise far from absolute. In fact, Congress clearly contemplated that habeas petitioners would challenge, and federal courts would consider, whether state court factual determinations are supported by the record when it enacted 2254(f).[8]   If an examination of the sufficiency of the evidentiary record to support a state court's factual findings were off limits under § 2254(e)(1), it would make no sense to provide, in the very next subdivision of the same statute, a mechanism for facilitating review of precisely that question.  Furthermore, the Supreme Court in its analysis in both *Wiggins* and *Miller-El* has clearly rejected the notion that federal courts are required by § 2254(e)(1) to take state court factual determinations at face value.

---

[8]Section 2254(f) addresses the requirements for providing the federal court with the state court record in situations where "the applicant challenges the sufficiency of the evidence adduced in such State court proceedings to support the State court's determination of a factual issue made therein.

At first glance, some tension does appear to exist between 2254(e)(1), under which state court factual findings are to be presumed correct, and 2254(d)(2), which can only be read as requiring federal habeas courts to look beneath a state court's factual findings to assess their reasonableness in light of the record that was before the state court.  *See Rice v. Collins,* 126 S. Ct. 969, 974 (2006) (acknowledging but declining to resolve dispute over whether both § 2254(e)(1) and (d)(2) should apply to a particular state court factual determination).  This tension largely dissolves, however, when the two provisions are viewed with a practical eye, and in light of the principle that a "statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879)).

When viewed in this manner, it becomes clear that the function of § 2254(e)(1), which is situated immediately before the provision limiting the availability of federal evidentiary hearings, see § 2254(e)(2), is to define the burden a prisoner must bear when seeking to disprove a state courts' factual findings by using evidence not presented to the state courts.  Where, on the other hand, the evidentiary record before the federal court is the same as the record considered by the state court, § 2254(d)(2)–with its focus on the reasonableness of factual determinations "in light of the evidence presented in the state court proceeding"–provides the mechanism for dealing with a petitioner's contention that a state court's resolution of (or failure to resolve) a factual issue was materially unreasonable. *See generally Lambert v. Blackwell*, 387 F.3d 210, 235-37 (3d Cir. 2004); *Taylor v. Maddox*, 366 F.3d 992, 999-1008 (9th Cir. 2004); *Breighner v. Chesney*, 301 F. Supp. 2d 354, 366 (M.D. Pa. 2004).

24

Nevertheless, the most important point for the purposes of this case is that none of the instances of the state courts' misapprehending the facts relating to Petitioner's claims that were adjudicated on the merits in state court present close questions likely to give rise to difficult issues of statutory construction or application. To the contrary, as will be discussed in Petitioner's forthcoming brief, the material defects in the state court's factual determinations are obvious. It is well-settled that should this Court find the state court decision to be an unreasonable determination of the facts in light of the evidence presented or the state court failed to make a relevant factual finding, this Court's ability to grant relief is not limited by § 2254(d) or § 2254(e). Likewise, because the state court did not grant an evidentiary hearing, any factual findings that it made are "unreasonable" and should not be entitled to a presumption of correctness. *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004); *but see Valdez v. Cockrell*, 274 F.3d 941, 948-50 (5th Cir. 2001).

C.    The availability of a federal evidentiary hearing

In its Answer, Respondents purport to recite the law governing the availability of a federal evidentiary hearing, first quoting the text of 2254(e)(2), and then declaring: "Thus any factual basis of Havard's claims not developed in the State court proceedings do not fall into either of the exceptions noted by § 2254." (Answer at p. 25). This suggests that § 2254(e)(2) operates as a sort of "strict liability" provision that precludes federal evidentiary hearings whenever facts have gone undeveloped in state court, regardless of why they have gone undeveloped. The Supreme Court, however, squarely rejected precisely this reading of the statute in *(Michael) Williams v. Taylor*, 529 U.S. 420 (2000), and instead read § 2254(e)(2)'s opening clause ("If the applicant has failed to develop") to mean that a petitioner is not subject to the AEDPA's restrictions on federal evidentiary hearings at all "unless there is lack of diligence, or some greater fault, attributable to the prisoner or

the prisoner's counsel." *Williams*, 529 U.S. at 432; *see also McDonald v. Johnson*, 139 F.3d 1056, 1058-60 (5th Cir. 1998); *Fisher v. Lee*, 215 F.3d 438, 454 (4th Cir. 2000).

Once a federal court determines pursuant to *Williams* and § 2254(e)(2) that the prisoner was not at fault for the lack of factual development before the state courts, it should convene an evidentiary hearing on any factual issue not adequately resolved by the state courts, so long as the petitioner has alleged facts which, if proven, would entitle him to relief. *See* Rule 8, Rules Governing Section 2254 Cases in the United States District Courts; *Townsend v. Sain*, 372 U.S. 293, 312 (1963); *Guidry v. Dretke,* 397 F.3d 306, 323 (5th Cir. 2005); *Murphy v. Johnson*, 205 F.3d 809, 815-816 (5th Cir. 2000). Petitioner has alleged such facts in the Petition. Moreover, because the state courts denied Petitioner an evidentiary hearing to develop all relevant facts, there is no barrier to this Court granting a hearing. Petitioner shall file a motion directly addressing the need for an evidentiary hearing in this case.

### D.     Assessing the Prejudicial Effect of a Constitutional Error

Discussing harmless error, Respondents broadly assert that if the Court finds error in the case, then it "must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." (Answer at p. 24). However, the majority of Petitioner's grounds for relief concern allegations of trial counsel's ineffectiveness. Those types of claims do not require a federal court to apply the *Brecht* standard for assessing the prejudicial impact of constitutional error. *See, e.g, Kyles v. Whitley*, 514 U.S. 419, 436 (1995); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (*en banc*). Petitioner will set forth the specific test for assessing the prejudicial impact of each type of error in each ground for relief in his forthcoming merits brief.

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, and for any additional reasons that have been set forth in the Petition for Writ of Habeas Corpus or may be set forth in Petitioner's upcoming brief on the merits, this Court should find that Petitioner's allegations are deemed admitted by Respondents' failure to file a proper Answer; that Respondents have waived other procedural defenses; that Petitioner's claims are not procedurally barred; and that Petitioner's claims are fully exhausted, or that exhaustion is excused.  In the alternative, should the Court find that certain of Petitioner's claims have not been exhausted, and that such non-exhaustion is not excused, Petitioner prays that this Court will stay these proceedings and hold them in abeyance pending further state court proceedings to exhaust those claims.  Finally, for the reasons set forth herein and in the Petition, Petitioner prays for all relief requested in the Petition.

This the 12th day of June, 2009.

Respectfully submitted,

**JEFFREY HAVARD**


s/*Mark D. Jicka*_____
MARK D. JICKA

**OF COUNSEL:**

Mark D. Jicka (MSB No. 8969) **[LEAD COUNSEL]**
Graham P. Carner (MSB No. 101523)
WATKINS & EAGER PLLC
400 East Capitol Street
The Emporium Building (39201)
P. O. Box 650
Jackson, MS  39205
Phone: (601) 965-1900
Fax: (601) 965-1901
Email: mjicka@watkinseager.com
Email: gcarner@watkinseager.com

## CERTIFICATE OF SERVICE

I  hereby certify that on June 12, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> Jim Hood
> agcivillit@ago.state.ms.us
>
> Patrick J. McNamara, Jr.
> pmcna@ago.state.ms.us
>
> Marvin L. White, Jr.
> swhit@ago.state.ms.us

> *s/ Mark D. Jicka*
> MARK D. JICKA