# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**JEFFREY KEITH HAVARD**,                                             *Petitioner*

*v.*                                              **CIVIL ACTION NO:  5:08-cv-275-KS**

**CHRISTOPHER EPPS, et al.**                              *Respondents*

---

## RESPONSE IN OPPOSITION TO MOTION TO STAY AND ABATE PROCEEDINGS PENDING STATE COURT SUCCESSIVE PETITION

---

**COME NOW**, the respondents, by and through counsel, and file this objection to petitioner's motion to stay or abate the proceedings in the above styled and numbered cause.  Petitioner moves the Court to stay proceedings pending consideration of a second, successive petition for post-conviction relief filed with the Mississippi State Supreme Court.  The respondents respectfully request this Court deny petitioner's motion to stay and abate.  Petitioner's state court petition is based on a claim which is barred by 28 U.S.C. § 2244(d)(1)(A).[1]  Petitioner's state court petition is based on a claim which is procedurally defaulted and barred on the basis of independent and adequate state law grounds.  Alternatively, petitioner cannot show the claim supporting his state court petition entitles him to relief.[2]

---

[1]*Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005); *see Underwood v. Epps*, 2010 WL 148299 (S.D. Miss. 2010).

[2]*Loden v. Epps*, 2013 WL 5243670, *11, *42 (N.D. Miss. 2013) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-730, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

As petitioner correctly states in his motion, his newly discovered evidence claim was never presented to the state courts for adjudication.  [Docket No. 85 at 1].  Petitioner then cites to *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) and *Cullen v. Pinholster*, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) to support the assertion that he is entitled to stay and abate these proceedings pending a successive state court petition based on a claim that was not raised in his Petition for Writ of Habeas Corpus or Amended Petition for Writ of Habeas Corpus.  [Docket No. 10 & 60].  *Rhines* and *Pinholster* discourage this type of piecemeal litigation.

## I

This newly discovered evidence claim is barred by the United States Supreme Court's holding in  *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), which states that a claim asserting a new ground for relief in an amended habeas petition, based on facts that differ in both time and type from those presented in the original pleading is subsequently barred from consideration by the Antiterrorism and Effective Death Penalty Act of 1996, hereafter (AEDPA).  *Id.*

In *Mayle*, the United States Supreme Court specifically addressed the issue squarely before this Court, whether a claim not asserted in the original habeas petition but later raised in the amended habeas petition, was subject to the AEDPA's statute of limitations, and held:

> Habeas Corpus Rule 2(c), we earlier noted, see supra, at 2569-2570, instructs petitioners to "specify all [available] grounds for relief" and to "state the facts supporting each ground." Under that Rule, Felix's Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence." Felix's approach, the approach that prevailed in the Ninth Circuit, is boundless by comparison.  A miscellany of claims for relief could be raised later rather than sooner and relate back, for "conduct, transaction, or occurrence" would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction.  An approach of that breadth, as the Fourth Circuit observed, "views 'occurrence' at too high a level of generality.6

Congress enacted AEDPA to advance the finality of criminal convictions. *See Rhines v. Weber*, 544 U.S. 269, 276, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance. See 379 F.3d, at 619 (Tallman, J., concurring in part and dissenting in part) (Ninth Circuit's rule would permit "the 'relation back' doctrine to swallow AEDPA's statute of limitation"); *Pittman*, 209 F.3d, at 318 ("If we were to craft such a rule, it would mean that amendments ... would almost invariably be allowed even after the statute of limitations had expired, because most [habeas] claims arise from a criminal defendant's underlying conviction and sentence."); *Duffus*, 174 F.3d, at 338 ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). The very purpose of Rule 15(c)(2), as the dissent notes, is to "qualify a statute of limitations." Post, at 2576. But "qualify" does not mean repeal. *See Fuller v. Marx*, 724 F.2d 717, 720 (C.A.8 1984). Given AEDPA's "finality" and "federalism" concerns, *see Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Hicks*, 283 F.3d, at 389, it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words "conduct, transaction, or occurrence" in federal habeas proceedings than in ordinary civil litigation, *see supra*, at 2570-2572.

Felix urges that an unconstrained reading of Rule 15(c)(2) is not problematic because Rule 15(a) arms district courts with "ample power" to deny leave to amend when justice so requires. *See* Brief for Respondent 31-33. Under that Rule, once a responsive pleading has been filed, a prisoner may amend the petition "only by leave of court or by written consent of the adverse party." Rule 15(a); *see Ellzey v. United States*, 324 F.3d, at 526 (AEDPA's aim to "expedite resolution of collateral attacks ... should influence the exercise of discretion under Rule 15(a)-which gives the district judge the right to disapprove proposed amendments that would unduly prolong or complicate the case."). This argument overlooks a pleader's right to amend without leave of court "any time before a responsive pleading is served." Rule 15(a). In federal habeas cases that time can be rather long, as indeed it was in the instant case. *See supra*, at 2567. Under Habeas Corpus Rule 4, a petition is not immediately served on the respondent. The judge first examines the pleading to determine whether "it plainly appears ... that the petitioner is not entitled to relief." Only if the petition survives that preliminary inspection will the judge "order the respondent to file an answer." In the interim, the petitioner may amend his pleading "as a matter of course," as Felix did in this very case. Rule 15(a). Accordingly, we do not regard Rule 15(a) as a firm check against petition amendments that present new claims dependent upon discrete facts after AEDPA's limitation period has run.

545 U.S. at 661-663. [footnote omitted]

Petitioner filed his original habeas petition on April 10, 2009. [Docket No. 10].  The claim now before the Court was not presented in his original habeas petition.  [*See id.*].  In fact, this claim has yet to be raised in this Court.  Petitioner seeks to do exactly what the *Mayle* Court said he could not do.  This new claim does not "relate back" to the original petition.  Accordingly, the dictates of *Mayle* clearly apply, making this claim barred from consideration by this Court.

In *United States v. Hardy*, 2007 WL 683941(S.D. Miss. 2007), this Court considered a claim in much the same context as the case at bar.  There, the Court held that:

> In *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), the United States Supreme Court analyzed the relationship between relation-back under Rule 15 of the Federal Rules of Civil Procedure and the one-year time limit of the habeas rules. Rule 15(c)(2) states that an amended pleading relates back to the date of an earlier timely pleading if the amended and earlier pleading arises out of the same "conduct, transaction, or occurrence."  The Supreme Court held that the claims in an amended habeas petition will relate back to the original filing "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle*, 125 S.Ct. at 2570.  In *Mayle*, the Court held that challenges to the petitioner's pretrial statements raised in an amended petition did not relate back to the earlier petition, which challenged a witness's statements in a police interrogation that had occurred in a different time and place.  The Court held that because the claims arose from different conduct, the amended claim did not relate back to the earlier petition and was not timely filed.

> In *United States v. Saenz*, 282 F.3d 354 (5th Cir. 2002), the defendant filed a timely § 2255 petition asserting that his lawyer never had communicated sufficiently with him or had passed along any plea offer to him.  *Id*. at 355.  The defendant requested leave to supplement his petition after the one year statute of limitations for filing a § 2255 had expired.  The government conceded that the amended claim was also based on the defense counsel's failure to communicate a plea offer to the defendant and, thus, related back to the original § 2255.  *Id*. at 356.  The district court denied the supplement as untimely without considering whether it related back to the original claim. Consequently, the Fifth Circuit reversed the district court's decision, holding that a district court must consider whether the proposed claims in the supplemental petition relate back to the original claim.  *Id*.

The United States contends that every other Circuit to consider the issue has held that where the proposed amendment or supplement to a timely filed § 2255 petition is requested after the one-year statute of limitations has expired is not allowed unless the amendment relates back to previously-filed issues. *United States v. Hicks*, 283 F.3d 380, 388-89 (D.C. Cir. 2002); *United States v. Thomas*, 211 F.3d 430, 436 (3d Cir. 2000); *United States v. Pittman*, 209 F.3d 314, 318 (4 Cir. 2000); *United States v. Rodriguez*, 286 F.3d 972, 981 (7th Cir. 2002); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999); *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10 Cir. 2000); *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).

Citing the *Hicks* decision from the D.C. Circuit, the United States argues that the term "relation back" refers to the fact that the issues arise from the same facts and legal principles, not that the claims arose from the same criminal prosecution. The *Hicks* Court noted as follows:

> Although Rule 15(c) could be read to mean that the relevant "occurrence" is the claimant's trial and sentencing, this interpretation has been resisted, and with good reason.  In most cases, a prisoner's claims for collateral relief will arise out of the same criminal conviction; therefore, if the defendant's trial and sentencing are construed to be the "occurrence," virtually any purported amendment will relate back.  Such a result would be difficult to square with Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions. . . . Therefore, like our sister circuits, we agree that Rule 15(c) does not apply where the prisoner's proposed amendment makes claims or is based on occurrences "totally separate and distinct, 'in both time and type' from those raised in his original motion."  283 F.3d at 388 (citations omitted). *See also Espinoza-Saenz*, 235 F.3d at 505; *Pittman*, 209 F.3d at 318.

Based on this observation from the *Hicks* decision, the United States submits that the present claims relating to improper closing argument and insufficiency of the evidence (issues 2 and 4) do not relate to any of the fourteen claims timely filed in the defendant's initial § 2255 motion.  Hence, says the United States, these issues should be denied as procedurally barred.

Additionally, argues the United States, the same disposition should be accorded to the lone issue raised in the petitioner's second memorandum seeking to supplement, that the United States suppressed crucial evidence when it did not present the petitioner with Debroski Rushing's criminal record. This is a new issue, says the United States, and is procedurally barred since it does not relate back to any issue raised in the petitioner's original petition/motion for relief under § 2255.

The United States also argues that the issue of suppressed crucial evidence has no merit because the United States did not call Debroski Rushing as a witness. Thus, says the United States, it had no obligation to produce his criminal record, if any, to the petitioner. The United States adds that it had the statement given by Debroski Rushing to law enforcement officers on the day in question, and that this statement was provided to the petitioner at trial.

This court agrees with the United States. The proposed amendments to the petitioner's original petition/motion for relief under § 2255 filed over one year after the petitioner's conviction and sentence became final and which do not relate back to previously filed issues do not escape the AEDPA's one-year time limit. *Mayle v. Felix*, 125 S.Ct. at 2570. The petitioner may not amend or supplement his original § 2255 petition/motion with these issues under Rule 15 as he proposes to do.

2007 WL 683941 at *5-*7.

Likewise, in *Underwood v. Epps*, 2010 WL 148299 (S.D. Miss. 2010), this Court refused to grant a motion to stay and abate proceedings where a *Brady* claim was presented to this Court beyond the time limitations of 28 U.S.C. § 2244(d)(1). In *Underwood*, the Court stated that:

This matter came before the Court on the petitioner's Motion to Stay and Abate Pending State Court Successive Petition, in which he asks the Court to stay the proceedings in this case until the Mississippi Supreme Court rules on a recently-filed petition for post-conviction relief. The state court petition is based on a claim that the prosecution withheld potentially exculpatory evidence, in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963). According to Petitioner, he only recently discovered the basis for that claim. Respondents argue that the claim is not viable in this case, as it was not submitted to this Court within the statute of limitations provided by 28 U.S.C. § 2244(d)(1). After a review of the law and the facts of this case, the Court agrees.

Underwood's original Petition for Writ of Habeas Corpus was filed on May 19, 2006. According to Respondents, that was thirty-nine days before the statute of limitations ran. The Court permitted Underwood to file an Amended Petition, which was submitted on November 28, 2007. The *Brady* claim at issue here was not included in the original Petition, but appears in the Amended Petition. When Respondents answered the Amended Petition, they asserted that the *Brady* issue was unexhausted, as it was never presented to the state court for review. The petition for post-conviction relief that was recently filed in state court is an attempt to exhaust that issue.

Although Underwood was permitted to amend his Petition, the *Brady* claim was filed beyond the one-year limitations period provided in 28 U.S.C. § 2244(d)(1). Accordingly, the claim is time-barred unless it relates back to the original pleading as addressed in Fed. R. Civ. P. 15(c)(1). Respondent contends that the issue cannot relate back for the reasons stated in *Mayle v. Felix*, and that there is no need to stay or abate while Underwood exhausts an otherwise defective federal claim. 545 U.S. 644, 663-64 (2005). Underwood filed no rebuttal despite having been granted two extensions to do so, the most recent of which was granted October 28, 2009.

The Court understands that the *Brady* issue may rest on newly discovered evidence that could justify equitable tolling of the statute of limitations on that claim. However, the Court has been directed to no authority that would permit Underwood to add this claim to his original Petition simply because it is based on new evidence, and Underwood has not attempted to relate it back to any issue raised in his original Petition. Neither party directed the Court to any authority suggesting whether a delinquently added claim creates a "mixed petition" of the sort addressed in *Rhines v. Weber*, 544 U.S. 269 (2005). There is some indication that it would not. *C.f., Kirton v. Ercole*, No. 9:08-CV-0719 (DNH), 2009 WL 192525, at *1 (N.D.N.Y. Jan. 27, 2009) ("Where, as here, a petitioner seeks a stay of a petition to exhaust a claim in state court and thereafter assert an otherwise untimely claim in an amended habeas petition, the petitioner must demonstrate that the proposed amendment is timely because it 'relates back' to the claims he asserted in his original petition.").

For these reasons, it appears that the *Brady* claim cannot be considered as part of this case. Thus, there is no need to stay or abate pending a resolution of the issue in state court, and Petitioner's motion will be denied. However, because the issues relative to this new claim have not been fully addressed, the denial will be without prejudice to Underwood's making a similar request for relief at a later date . . . .

2010 WL 148299, *1-*2.

Under *Mayle*, petitioner's motion to stay and abate must be denied as this claim is barred from consideration by the statute of limitations found in 28 U.S.C. § 2244(b)(1)(A). *See Mayle, supra*. Petitioner's newly discovered evidence claim challenges Chloe Britt's cause and manner of death under a different legal theory, which does not relate back to any previously filed issue. Respondents submit this claim is barred by 28 U.S.C. § 2244(d)(1). Petitioner's newly discovered evidence claim cannot be considered, and stay and abeyance is unnecessary. The respondents respectfully request this Court deny petitioner's motion to stay and abate these proceedings.

**II**

The respondents submit petitioner's newly discovered claim is procedurally defaulted and barred from federal habeas review by the doctrine of independent and adequate state law grounds. The respondents submit a stay and abeyance of petitioner's federal habeas proceedings is unnecessary. Petitioner's attempt to exhaust this newly discovered claim in state court is futile. "[I]t is clear that the state court to which he would return to exhaust the claim would find the claim procedurally barred, the claim is procedurally defaulted for purposes of federal habeas corpus relief." *Loden* , 2013 WL 5243670, at *11.[3]

The Mississippi State Supreme Court affirmed petitioner's conviction and sentence on direct appeal.[4] *Havard v. State*, 928 So.2d 771 (Miss. 2006). Subsequently, the State Supreme Court denied petitioner's application for post-conviction relief as well as his first, successive post-conviction petition. *Havard v. State*, 988 So.2d 322 (Miss. 2008); *Havard v. State*, 86 So.3d 896 (Miss. 2012). The State Supreme Court applied the procedural bars found in Sections 99-39-5(2), 99-39-21(1)-(3), 99-39-23(6), 99-39-27(9) of the Mississippi Code of 1972, Annotated, when it denied petitioner's application for State post-conviction relief and first, successive post-conviction

---

[3]Citing *Coleman*, 501 U.S. at 735 n. 1; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

[4]The Mississippi State Supreme Court held several of petitioner's claims procedurally barred for reasons including his failure to contemporaneously object. *See Loden*, 2013 WL 5243670, at *11 (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (applying procedural bar for petitioner's failure to contemporaneously object and preserve claim for review not circumvented by state court's alternative holding that constitutional claim lacked merit)).

petition. *Havard*, 988 So.2d 322, 333, 342, 344-346; *Havard*, 86 So.3d at 903-910.[5]  "[C]laims that the state court held procedurally barred on review on the basis of independent and adequate state law grounds" are barred from habeas review.  *Loden*, 2013 WL 5243670, at *11.

Petitioner's newly discovered evidence claim is time-barred as provided Section 99-39-5(2)(b) of the Mississippi Code, Annotated.  Petitioner's newly discovered evidence claim amounts to a successive writ and barred as provided by Sections 99-39-23(6) and 99-39-27(9) of the Mississippi Code, Annotated.  Petitioner was afforded the opportunity to challenge the evidence presented at trial under this theory of a short, accidental fall.  He decided not to do so.  Section 9-39-21(1) & (3) of the Mississippi Code, Annotated, bar him from doing so now.  Finally, petitioner seeks to challenge Chloe Britt's cause and manner of death under a different legal theory.  This challenge is barred by Section 99-39-21(2) & (3) of the Mississippi Code, Annotated.  Each of the bars mentioned above are addressed, in turn.

First, petitioner's second, successive state post-conviction relief petition is barred by the statute of limitations found in Section 99-39-5(2) of the Mississippi Code, Annotated, and does not fall within the exceptions to that bar.  Section 99-39-5(2) reads:

> (2)    A motion for relief under this article shall be made within three (3) years after the time in which the petitioner's direct appeal is ruled upon by the Supreme Court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction.  Excepted from this three-year statute of limitations are those cases in which the petitioner can

---

[5]Concerning petitioner's first, successive State post-conviction petition, the Mississippi State Supreme Court stated that "[Petitioner] has failed to demonstrate an exception to the procedural bars . . . [and his] Motion for Relief From Judgment or For Leave to File Successive Petition for Post-Conviction Relief is ***denied as time-barred and as a successive writ***."  *Havard*, 86 So.3d at 910 (emphasis added) (citing Miss. Code Ann. §§ 99-39-5(2)(b), 99-39-27(9)).

demonstrate either:

(a)(I)    That there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence; or

(a)(ii)    That, even if the petitioner pled guilty or nolo contendere, or confessed or admitted to a crime, there exists biological evidence not tested, or, if previously tested, that can be subjected to additional DNA testing that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution.

(b)    Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.  Likewise excepted are filings for post-conviction relief in capital cases which shall be made within one (1) year after conviction.

Miss. Code Ann. § 99-39-5(2).

Additionally, the Mississippi State Supreme Court regularly applies the time bar found at Section 99-39-5(2)(b) of the Mississippi Code, Annotated.[6]  *See Grayson v. State*, 118 So.3d 118, 129, 136 (Miss. 2013); *Havard v. State*, 86 So.3d 896, 903, 904, 907, 910 (Miss. 2012); *Bell v. State*, 66 So.3d 90, 92 (Miss. 2011); *King v. State*, 960 So.2d 413, 431 (Miss. 2007); *Jackson v. State*, 965 So.2d 686, 690 (Miss. 2007);  *Wiley v. State*, 842 So.2d 1280, 1283 (Miss. 2003); *Lockett v. State*, 656 So.2d 76, 78-79 (Miss. 1995); *see also Lambert v. State*, 941 So.2d 894, 809-10 (Miss. 2006);

---

[6]*Loden*, 2013 WL 5243670, *46 (citing *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012); *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).

*Laushaw v. State*, 926 So.2d 240, 241-242 (Miss. 2005); *Jones v. State*, 700 So.2d 631, 633 (Miss. 1997); *Hill v. State*, 659 So. 547, 549 (Miss. 1994).

On May 25, 2006, rehearing of petitioner's direct appeal was denied. *Havard*, 928 So.2d 771. Petitioner's second, successive post-conviction petition was filed in state court on November 25, 2013, well-beyond the time for filing a post-conviction petition. The exceptions to Section 99-39-5(2)(b)'s time bar do not apply to petitioner's newly discovered evidence claim. Therefore, this newly discovered evidence is procedurally defaulted as it will be time-barred in state court. *Havard*, 86 So.3d at 899 (citing Miss. Code Ann. § 99-39-5(2)(b)).

The respondents submit petitioner's newly discovered evidence claim is procedurally defaulted and barred on the basis of independent and adequate state law grounds. "[I]t is clear that the state court to which he would return to exhaust the claim would find the claim procedurally barred, [and so] the claim is procedurally defaulted for purposes of federal habeas corpus relief." *Loden* , 2013 WL 5243670, at *11.

Second, petitioner's newly discovered evidence claim amounts to a successive writ and is procedurally barred as such. *Havard*, 86 So.3d at 899, 910 (quoting *Knox v. State*, 75 So.3d 1030, 1036 (Miss. 2011) (citing Miss. Code Ann. §§ 99-39-23(6) and 99-39-27). This claim does not satisfy any exception to the successive-writ bars. As a result, petitioner's newly discovered evidence claim is successive and procedurally barred under Section 99-39-27(9) of the Mississippi Code, Annotated. Looking to Section 99-39-27(9), it provides for:

> (9) *The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article.* Excepted from this prohibition is an application filed under Section 99-19-57(2), raising the issue of the offender's supervening mental illness before the execution of a sentence of death. A dismissal or denial of an application relating to mental illness under Section 99-19-57(2) shall be *res judicata* on the issue and shall

likewise bar any second or successive applications on the issue. Likewise exempted from this prohibition are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States that would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, that is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence. Likewise exempted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.

Miss. Code Ann. § 99-39-27(9) (emphasis added).

The Mississippi State Supreme Court regularly applies the successive writ bars found at Sections 99-39-23(6) & 99-39-27(9).[7] *See Grayson v. State*, 118 So.3d 118, 129, 136 (Miss. 2013); *Havard v. State*, 86 So.3d 896, 901, 904, 907, 910 (Miss. 2012); *Underwood v. State*, 37 So.3d 10, 13 (Miss. 2010); *Loden v. State*, 43 So.3d 365, 389-90, 392, 395, 399 (Miss. 2010); *Howard v. State*, 945 So.2d 326, 359-60, 364 (Miss. 2006); *Byrom v. State*, 927 So.2d 709, 729 (Miss. 2006); *Powers v. State*, 945 So.2d 386, 393 (Miss. 2006); *Simmons v. State*, 942 So.2d 802, 804 (Miss. 2006); *Wiley v. State*, 842 So.2d 1280, 1283 (Miss. 2003)*; Lockett v. State*, 656 So.2d 76, 79 (Miss. 1995); *Hill v. State*, 659 So. 547, 549 (Miss. 1994).

On February 9, 2006, the Mississippi State Supreme Court affirmed petitioner's conviction and sentence on direct appeal. *Havard*, 928 So.2d 771. A timely petition for rehearing was filed and later denied on May 25, 2006. The Mississippi State Supreme Court denied petitioner's application for post-conviction relief on May 22, 2008. *Havard*, 988 So.2d 322. A timely petition for rehearing was filed and later denied on August 28, 2008.

After that time, any subsequent filing would amount to a successive petition for state post-

---

[7]*Loden*, 2013 WL 5243670, *46 (citing *Roberts*, 681 F.3d at 604; *Finley*, 243 F.3d at 218).

conviction relief.  Petitioner's newly discovered evidence claim does not fall under any of the exceptions to the bar found in Miss. Code Ann. § 99-39-27(9).  Thus, petitioner's newly discovered evidence claim amounts to a successive writ and is barred in state court.  This claim is procedurally defaulted and barred from this Court's review "on the basis of independent and adequate state law grounds." *Loden* , 2013 WL 5243670, at *11.

Third, Chloe Britt's cause and manner of death were adjudicated on the merits in state court.[8] Petitioner's newly discovered evidence claim is procedurally defaulted as it challenges Chloe Britt's cause and manner of death.  Section § 99-39-21 of the Mississippi Code, Annotated, states that the:

(1)    Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

(2)    The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

(3)    The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

(4)    The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

(5)    The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.

_____

[8]*See Havard v. State*, 86 So.3d 896 (Miss. 2012); *Havard v. State*, 988 So.2d 322 (Miss. 2008); *Havard v. State*, 928 So.2d 771 (Miss. 2006).

(6)     The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

Miss. Code Ann. § 99-39-21(1)-(6).  "The procedural bars of waiver, different theories, and res judicata and the exception thereto as defined in Miss. Code Ann. § 99-39-21(1-5) are applicable in death penalty PCR Applications."  *Havard*, 988 So.2d at 333 (citations and internal quotations omitted); *see Havard*, 86 So.3d at 901.

The bars found at Section 99-39-21(1)-(3) of the Mississippi Code, Annotated, are regularly applied by the Mississippi State Supreme Court.[9]  *See Grayson v. State*, 118 So.3d 118, 129-30, 132-33 (Miss. 2013); *Havard v. State*, 86 So.3d 896, 901, 903 (Miss. 2012); *Loden v. State*, 43 So.3d 365, 388 (Miss. 2010); *Havard*, 988 So.2d 322, 333 (Miss. 2008); *Le v. State*, 967 So.2d 627, 632 (Miss. 2007); *Howard v. State*, 945 So.2d 326, 344 (Miss. 2006); *Byrom v. State*, 927 So.2d 709, 725 (Miss. 2006); *Powers v. State*, 945 So.2d 386, 396 (Miss. 2006); *Bishop v. State*, 882 So.2d 135, 149 (Miss. 2004); *Gray v. State*, 887 So.2d 158, 167 (Miss. 2004); *Jackson v. State*, 860 So.2d 653, 663 (Miss. 2003); *Cole v. State*, 666 So.2d 767, 774 (Miss. 1995); *Hill v. State*, 659 So.2d 547, 549 (Miss. 1994); *Lockett v. State*, 614 So.2d 888, 893, 897 (Miss. 1992).

Petitioner's claim challenges Chloe Britt's cause of death under a theory of a short, accidental fall.  [*See* Docket No. 85 at 1, Exhibit "A"].  This challenge could have been, but was not raised at trial.  Since Dr. Hayne testified at trial concerning Chloe Britt's injuries, petitioner was afforded a fair opportunity to cross-examine Dr. Hayne on Chloe Britt's cause of death.  *Havard*, 988 So.2d at 345 (citing Miss. Code Ann. § 99-39-21(1)).  Petitioner did not.

Petitioner waived this challenge to Chloe Britt's cause of death.  Petitioner could certainly

---

[9]*Loden*, 2013 WL 5243670, *46 (citing *Roberts*, 681 F.3d at 604; *Finley*, 243 F.3d at 218).

have raised the issue on direct appeal, in application for post-conviction relief or in his first successive petition. He did not. Petitioner's claim does not fall within any of the exceptions to the bar found in Miss. Code Ann. § 99-39-21(1). Therefore, this newly discovered evidence claim is precluded from further consideration under Miss. Code Ann. § 99-39-21(1) & (3).

Further, petitioner's newly discovered evidence claim challenges Chloe Britt's cause and manner of death under a different legal theory–that Shaken Baby Syndrome has been debunked. [*See* Docket No. 85 at Ex. "A"].[10] "The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice." Miss. Code Ann. § 99-39-21(2).

The cause and manner of Chloe Britt's death were raised and subsequently abandoned at the time of trial. When he abandoned those challenges, petitioner waived any subsequent attempts to litigate cause and manner of death. The Mississippi State Supreme Court found the trial court had not abused its discretion when it refused to grant the funding necessary to secure an independent pathologist to provide "assistance in interpreting the autopsy reports."[11] *Havard*, 928 So.2d at 788-789 (finding "no abuse of discretion in the trial court's actions so as to deny Havard a fundamentally fair trial.").

---

[10]Chloe Britt's cause of death, Shaken Baby Syndrome, has been raised, litigated and decided by the Mississippi State Supreme Court. (State Court Record vol.1 at 92, 94). Petitioner's original motion and the trial court's order are attached hereto as respondents' state court response Ex. "A" and "B" respectively. [Docket No. 93, Ex. 1 "A" & "B"],

[11]*See* Resps' state court Response Ex. "A" and "B." [*Id.*].

Similarly, petitioner has consistently attacked trial counsels' performance. The Mississippi State Supreme Court found those challenges were without merit. *Havard*, 988 So.2d at 330-333 (rejecting the assertion that rejected trial counsel were ineffective for failing to secure a pathologist for purposes of developing a defense); *Havard*, 86 So.3d at 908 (describing petitioner's claim as nothing more than yet another "attempt to rehabilitate failed claims that already have been addressed by this Court."). On direct review in 2006, petitioner argued trial counsel failed to obtain experts, including a pathologist, for the purpose of developing a defense. *Havard*, 928 So.2d at 788-789. In 2008, the Mississippi State Supreme Court rejected petitioner's argument that trial counsel was ineffective for failing to secure a pathologist for purposes of developing a defense.[12]  *Havard*, 988 So.2d at 330-331. Specifically, the Mississippi State Supreme Court found "trial counsel made the request based on the need for assistance in interpreting the autopsy reports." *Id.* at 330. In 2012, the Mississippi State Supreme Court rejected subsequent evidence in the form of deposition testimony given by Dr. Hayne as nothing more than a mere "attempt to show that his trial counsel were ineffective in their failure to secure an independent pathologist." *Havard*, 86 So.3d at 910.

Petitioner's present claim challenges Chloe Britt's cause and manner of death rather than trial court error or ineffective assistance. However, "[r]ephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of res judicata." *Havard*, 86 So.3d at 910; *see Havard*, 988 So. 2d at 333 (citations and internal quotations omitted); *Havard*, 928 So.2d at 788-91 (finding

---

[12]The matter of sexual battery petitioner committed upon Chloe Britt is barred from further consideration by the doctrine of *res judicata* found at Miss. Code Ann. § 99-39-21(3). To the extent petitioner's expert affiants opine as to Dr. Hayne's autopsy report and the testimonies of the treating physicians, medical staff and others, this issue has been decided by the Mississippi State Supreme Court on three, separate occasions. *See Havard*, 86 So.3d at 910 (finding this issue procedurally barred and without merit); *Havard*, 988 So.2d at 333; *Havard*, 928 So.2d at 788-91.

petitioner's theory of ineffective assistance of counsel "claim for failing to secure, or adequately

prepar[ing] a motion to secure, a pathologist to investigate the case and defense strategy . . ." was

barred by the doctrine of *res judicata*) (citing Miss. Code Ann. § 99-39-21(3), *Wiley v. State*, 750

So.2d 1193, 1200 (Miss. 1999), *Foster v. State*, 687 So.2d 1124, 1129 (Miss. 1996), *Wiley v. State*,

517 So.2d 1373, 1377 (Miss. 1987)); *Loden v. State*, 43 So.3d 365, 388 (Miss. 2010) (citations and

internal quotation marks omitted).

Additionally, the record shows that petitioner has challenged Chloe Britt's cause and manner

of death under a theory that she died from injuries caused by a short, accidental fall. The following

exchange occurred between trial counsel and Dr. Laurie Patterson on cross-examination:

| | |
|---|---|
| Defense: | Dr. Patterson, when you were talking about the torn frenulum you talked about – I think you said a lot of times especially in children that a fall will cause that to happen? |
| Patterson: | Uh-hum. Yes. |
| Defense: | Well, even though this child wasn't walking, if this child had fallen from a height of, say, three feet onto a hard surface that could cause that frenulum to burst or to bleed; isn't that correct? |
| Patterson: | Yes. Anything that would cause – you know – something, a force type of effect, yes. |
| Defense: | Like a porcelain toilet top or something like that. Some solid object like that. |
| Patterson: | If she fell on to it with her mouth. |

. . . .

(Trial Tr. vol. 3 at 409, dated Dec. 16-19, 2002).

Chloe Britt's cause and manner of death have been reviewed several times by the Mississippi

State Supreme Court. Therefore, petitioner's claim challenging Chloe Britt's cause and manner of

death under a different legal theory is procedurally barred by Miss. Code Ann. § 99-39-21(2) & (3).

*See Havard*, 86 So.3d at 907-910 (stating that trial counsel were effective; and, the trial court had

not erred in denying petitioner funds to hire an independent pathologist for the purpose of assisting in interpreting the autopsy reports); *see also Brown v. State*, 948 So.2d 405, 411 (Miss. 2006); *Howard v. State*, 945 So.2d 326, 361 (Miss. 2006) (citing *Grayson v. State*, 879 So.2d 1008, 1022 (Miss. 2004).

Petitioner recognizes this newly discovered evidence claim is procedurally barred from review in state court. And so, petitioner tailors his present claim as an exception to the procedural bars found in the state's post-conviction and collateral relief act. Newly discovered evidence happens to be an exception to the state's post-conviction and collateral relief act.[13]  That said, petitioner's newly discovered evidence claim does not satisfy the requirements necessary to overcome the procedural bars found in state's post-conviction and collateral relief act.

To support this position, the respondents would direct the Court's attention to the respondents' state court response to petitioner's second, successive State post-conviction petition. [Docket No. 93, Ex. 1 at 25-32]. There, the respondents demonstrated petitioner's purported, newly discovered evidence, simply was not new for purposes of overcoming the procedural bars found in the state's post-conviction and collateral relief act.  The respondents' state court response, in pertinent part, appears below:

> This evidence, which petitioner touts as newly discovered or newly-available, was "capable of being raised at trial and / or on direct appeal." *Havard*, 86 So.3d at 901; *see Williams*, 669 So.2d at 55.  The respondent submits this evidence is not newly discovered evidence for purposes of overcoming the UPCCRA's procedural bars. With reasonable diligence, petitioner could have discovered this evidence and was capable of raising this defense on or before 2006. "[W]here a party fails to call a

---

[13]Newly discovered evidence is "evidence, not reasonably discoverable at the time of trial, that is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence . . . ." Miss. Code Ann. § 99-39-27(9); *see* Miss. Code Ann. §  99-39-5(2)(a)(I); *see also* Miss. Code Ann. § 99-39-21(4).

witness who was available during trial, the testimony of that witness cannot be considered newly discovered evidence." *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978).

This science-based, biomechanical evidence was nationally recognized at least as early as **1987**. The Journal of Neurosurgery first published *The Shaken Baby Syndrome: A Clinical, Pathological, and Biomechanical Study* in **1987**. *See* Ann-Christine Duhaime, et. al., *The Shaken Baby Syndrome: A Clinical, Pathological, and Biomechanical Study*, 66 J. Neurosurgery 409-415 (1987). The study's date is significant, because petitioner's expert affiant, Dr. Van Ee, describes this 1987 study as a "landmark" paper which "quantif[ies] the mechanics of shaking[.]" (Pet'r's Ex. "E" at 5, Aff. of Dr. Chris Van Ee, dated Nov. 13, 2013). Dr. Van Ee cites several other sources dating before petitioner's trial and direct appeal as bases for his short-distance fall theory. Another "landmark" paper, Dr. Van Ee relies upon, the dissertation of M. Range, et al., "*Biomechanics of Traumatic Brain Injury in the Infant,*" (Un. Penn. 2002) was published in **2003**. (Pet'r's Ex. "E" at 5-6).

Further, Dr. Van Ee has testified as an expert witness in case of *Virginia v. Estrella*, CR03051857-00, (Air. Cir. Ct. 2004) in **2004**. The portion of the transcript from *Estrella* in which Dr. Van Ee's testified is attached hereto as Exhibit "G." In *Estrella*, Dr. Van Ee testified that a short-distance fall caused a child's death, which is entirely consistent with his sworn statement petitioner currently offers as newly discovered evidence. *See Beasley*, 582 F.2d at 339.

Concerning forensic pathology, the American Journal of Forensic Pathology published a study in which Dr. John Plunkett concluded that symptoms associated with fatal injuries often times mimic Shaken Baby Syndrome caused by short-distance, accidental falls. (Pet'r's Ex. "E" at 9) (citing John Plunkett, *Fatal Pediatric Head Injuries Caused by Short-Distance Falls*, 22 Am. J. Forensic Med. Path. 1 (2001)). This article was published in **2001**. But even before 2001, Dr. Plunkett's short-distance, accidental fall position was gaining momentum with another one of petitioner's expert affiants, Dr. George R. Nichols, II.

In *State v. Edmunds*, which petitioner improperly cites as legal basis for granting him relief, Dr. Nichols testified as an expert for the petitioner, Edmunds. *Edmunds*, 746 N.W.2d 590 (Wis. Ct. App. 2008). In *Edmunds*, Dr. Nichols testified that as early as **1996**, he was influenced by Dr. John Plunkett, a forensic pathologist and short-distance fall proponent. Dr. Nichols testified that "in 1996, I believed that Shaken Baby Syndrome indeed could cause a head injury. I do not believe that that's true now . . . ." (Resp's Ex. "H" at 274:4-6, 275:3-13, 278:11; 289:16-22).

When asked why his opinion had changed, Dr. Nichols recalled hearing Dr. John Plunkett testify in a **1996** evidentiary hearing concerning Shaken Baby Syndrome.

*Id.* at 137:9-10.  Dr. Nichols was taken aback by Dr. Plunkett's testimony, so much so that Dr. Nichols "went back and did some basic physics" to gain an understanding and an appreciation of published biomechanical studies and their effect on the forensic pathology community.  *Id.*  at 137:9-10.  Nichols specifically noted  that since **1996**, "changes reflected in the medical literature that I believe are valid . . . ." *Id.*  at 154:3-8.  Dr. Nichols, as early as **1996**, recognized the effect of biomechanical engineer had in cases involving Shaken Baby Syndrome, which predates petitioner's trial by some six (6) years.  *See Beasley*, 582 F.2d at 339.

Likewise, Dr. Michael Baden has long-held a position which is entirely consistent with his present findings and conclusions.  In a **1998** American Bar Association Journal article, Dr. Baden, who at the time had thirty-five (35) years of experience as a forensic pathologist, was quoted as having "only seen two or three [cases of Shaken Baby Syndrome] in [his] lifetime."  *See* Mark Hansen, *WHY ARE IOWA's BABIES DYING?*, 84 A.B.A.J. 74 (Aug. 1998) (attached hereto as Resp's Ex. "I"). That position continued to evolve as evidenced by an unpublished California Court of Appeals opinion.  *People v. Tison*, 2003 WL 23034287 (Cal. Ct. App. 2003) (attached hereto as Resp's Ex. "J").

In *Tison*, Dr. Baden provided prior testimony entirely consistent with his present findings and conclusions–that Chloe Britt's death was caused by blunt-force trauma sustained as a result of a short-distance fall.  The court in *Tison* took note of Dr. Baden's position on Shaken Baby Syndrome as a cause of death.  *Id*. at *5. Specifically, it noted that "[a]ccording to Dr. Baden, **shaken baby impact syndrome [wa]s impossible to prove**."  *Id.* (emphasis added).  Dr. Baden's present testimony is consistent with his testimony in *People v. Tison*.  *See Beasley*, 582 F.2d at 339. Again, Dr. Baden's testimony rests on information published at or around the time of petitioner's trial or direct appeal.

The same is true of Dr. Janice Ophoven, forensic pathologist.  She too provides a sworn statement in which she specifically references material available prior to petitioner's trial.  In her sworn statement, Dr. Ophoven points to a **2001** position paper issued by the National Association of Medical Examiners (NAME).  (Pet'r's Ex. "E" at 17).  She points out that "this paper did not pass peer review, was never endorsed by the membership, and many leading forensic pathologist voiced their opposition to its content."  *Id.*

The respondent would also direct the Court's attention to *State v. Huynh*, in which Dr. Janice Ophoven testified in a manner consistent with the statement she has provided petitioner.  *See Huynh*, 2005 WL 3159704, *2 (Minn. Ct. App. 2005) (Resp's Ex. "K").  The opinion was handed down in late **2005**.

In *State v. Huynh*, Dr. Janice Ophoven provided expert testimony during a post-

conviction relief hearing in *Huynh*. *Id.* at *2. Dr. Ophoven's testimony identified blunt-force trauma, not Shaken Baby Syndrome, caused a two year-old child's death. *Id.* She went on to state that the child could have sustained injuries from some blunt-force trauma up to seventy-two (72) hours prior to death. *Id.* Dr. Ophoven opined the child's brain was compensating for swelling, during a lucid interval. *Id.* According to her, time of death was a primary issue. *Id.* Dr. Ophoven rejected the notion that the injuries sustained by the child could have occurred only minutes before the child's arrival at an emergency room. On cross, Dr. Ophoven admitted that the child's unresponsiveness could have occurred immediately after sustaining the injuries. *Id.*

The Minnesota court of appeals characterized Dr. Ophoven's testimony as supporting a theory of "we don't know what happened . . ." and described her as an "inconsistent" expert witness. *Id.* at *4. The court went on to state that "[g]iven the possible problems with Dr. Ophoven's testimony on timing, appellant has not met her burden of proving a reasonable probability that the outcome of trial would have been different." *Id.*

In 2006, the United States Circuit Court of Appeals for the Eighth Circuit, in *United States v. Red Bird*, also commented on testimony given by Dr. Ophoven. *Red Bird*, 450 F.3d 789, 792 (8th Cir. 2006) (Resp's Ex. "K1"). There, the Eighth Circuit noted that Dr. Ophoven was of the opinion that the infant was incapable of "suffer[ing] traumatic brain injury serious enough to develop symptoms and die ***by virtue of shaking alone***, and that there ***must*** be evidence of impact." *Id.* at 792 (emphasis added). It is significant to note that in this case Dr. Ophoven testified as an expert witness in a manner wholly consistent with those statements in her presently attached affidavit. Clearly, Dr. Ophoven was available as early as 2005 to offer the same opinion petitioner now avers is new. Further, her current position–that Shaken Baby Syndrome cannot occur absent impact trauma–rests on information available prior to petitioner's 2002 trial.

Among the affidavits attached to petitioner's petition is one given by Dr. Steven Hayne. In his July 22, 2013 affidavit, Dr. Hayne clearly states "with a reasonable degree of medical certainty" that Chloe's cause-of-death would be classified "as **shaken baby syndrome** with impact or blunt force trauma." (Pet'r's Ex. "A" at 2, Aff. of Dr. Steven T. Hayne, dated July 22, 2013) (emphasis added). Petitioner offers no insight as to why this information was undiscoverable at the time of petitioner's trial and or direct appeal. After all, Dr. Hayne testified at trial concerning Chloe's injuries and petitioner had an opportunity to cross-examine Dr. Hayne on that issue. *See Havard*, 988 So.2d at 345. Additionally, petitioner has deposed Dr. Hayne and hired an independent pathologist in earlier post-conviction proceedings. *See Havard*, 86 So.3d at 904-910.

One additional source proves the evidence supporting petitioner's short, accidental fall theory was available at the time of petitioner's trial–petitioner. Petitioner provides the factual predicate supporting this short, accidental fall theory. His statements prove this evidence was available at trial. Petitioner, during a video-recorded interview, told law enforcement officials that he accidentally dropped Chloe. (Pet'r's Ex. "F" at 4). Petitioner points to the transcript of this interview in this second, successive post-conviction in support of claim for relief. (Pet'r's Mot. at 6-7). Yet, he offers no explanation for not raising this challenge at trial, on direct appeal or in his application for post-conviction relief. Instead, he demands that he be given an opportunity to present this challenge more than a decade later. The respondent submits this evidence is not new, as evidenced by petitioner's statements made prior to trial.

This is not new evidence as it was "capable of being raised at trial and / or on direct appeal." *Havard*, 86 So.3d at 901; *see Williams*, 669 So.2d at 55; *Beasley*, 582 F.2d at 339. All of the petitioner's expert affiants were either: (a) testifying in a manner entirely consistent with their present sworn statements; (b) relying on "landmark" information published and recognized in the field of biomechanical engineering prior to and / or at the time of petitioner's trial and/or direct appeal; or, (c) both. The fact petitioner has recently discovered it does not make it newly discovered. The respondent submits petitioner cannot carry his burden to prove, with fact, his newly discovered evidence claim overcomes the UPCCRA's procedural bars.

[Docket No. 93, Ex. 1 at 25-32] (footnotes omitted).[14]

As the passage above shows, petitioner's newly discovered evidence claim fails to meet the newly discovered evidence exception to the procedural bars of the state's post-conviction and collateral relief act. This claim is procedurally barred in state court by Sections 99-39-5(2)(b), 99-39-23(6), 99-39-27(9) & 99-39-21(1)-(3) of the Mississippi Code, Annotated. As a result, this newly discovered evidence claim is procedurally defaulted and barred "on the basis of independent and adequate state law grounds." *Loden*, 2013 WL 5243670, at *11.

The doctrine of independent and adequate state law grounds bars this claim from habeas review, unless Petitioner can show the fundamental miscarriage of justice exception applies. To do

---

[14]The respondents' entire state court response is attached hereto as Exhibit 1. [Docket No. 93, Ex. 1].

so requires petitioner show cause and prejudice.  *Id.*  Petitioner has not shown "some objective factor external to the defense impeded counsel's efforts to comply with the states procedural rule."  *Id.* (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Likewise, petitioner has not shown "errors worked to [his] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* (internal quotation marks omitted) (emphasis in the original).

In an attempt to show cause, petitioner claims science-based evidence debunking Shaken Baby Syndrome now exists, but did not at the time of his 2002 trial.  Looking his recent Memorandum in Support of Amended Petition for Issuance of the Writ of Habeas Corpus, petitioner foreshadowed, that:

> [w]hile the issues of felonious child abuse and "Shaken Baby Syndrome" are not before this Court because Petitioner was tried solely for murder during the commission of sexual battery, the autopsy findings are consistent with Chloe being accidentally dropped and striking the toilet, as described by Petitioner.  The trial court essentially found this to be true when it found that there was evidence that Chloe's injuries, such as that to her frenulum, could have been caused by a fall.  This is the view taken by renowned forensic pathologist, Dr. Michael Baden . . . .

[Docket No. 69 at 18 n. 1].  Though the respondents disagree with petitioner's summarization, it is significant in that petitioner recognizes evidence of an accidental fall was available at trial.  *Id.* Thus, petitioner could have used this evidence to support his theory that Chloe Britt died from injuries caused by a short accidental fall.  *Id.*  Petitioner excuses his failure to raise this accidental fall defense by pointing to the nature of his charged offense.[15]  *Id.*  Petitioner points out that he "was tried solely for murder during the commission of sexual battery . . . ."  *Id.*  That said, the fact that

---

[15]The death of a child during the commission or attempted commission of a "felonious abuse and / or battery of a child in violation of subsection (2) of Section 97-5-39 . . . ."  Miss. Code Ann. § 97-3-19(2)(f).

petitioner was charged with capital murder during the commission of a sexual battery in no way impeded him from raising this short, accidental fall defense.  The respondents submit petitioner has not shown cause and does not show prejudice necessary to overcome the doctrine of independent and adequate state law grounds.  *See Loden*, 2013 WL 5243670, *11.

Further, the respondents would point to the recent second, successive post-conviction petition filed in state court as evidence showing petitioner is engaging in dilatory tactics.  A stay and abeyance is appropriate where there is good cause shown for failure to exhaust a meritorious claim against the incentive to "deliberately engage in dilatory tactics to . . . avoid execution of the sentence of death."  *Rhines*, 544 U.S. at 278.  *Rhines* expressly warns district courts to guard against dilatory tactics, noting [ in particular], that "capital petitioners might deliberately engage in dilatory tactics . . . ."  *Id.* at 277.

Here, petitioner has little or no "incentive to obtain federal relief as quickly as possible . . . ."  *Id.* at 277.  The respondents would remind the Court that petitioner has employed this strategy of claiming actual innocence based on a newly discovered evidence claim, previously.  [*See* Docket No. 49 at 4-5].  On April 12, 2011, petitioner moved this Court stating, "grounds for relief have not previously been raised in Mississippi's state courts, because the factual grounds for the claims were not discovered until recently."  [*Id.* at 1].  This Court granted that motion, in part. [Docket No. 54 at 1-2].  The Mississippi State Supreme Court, in turn, denied petitioner's State post-conviction relief on the issue.  *See Havard*, 86 So.3d 896.

The respondents submit that petitioner's newly discovered evidence claim is procedurally defaulted and barred from habeas review on independent and adequate state law grounds.  Further, petitioner has failed to show cause or prejudice necessary to receive habeas review of this claim.

And, by filing his second, successive petition for state post-conviction relief, petitioner has demonstrated an intent to "deliberately engage in dilatory tactics to . . . avoid execution" of his sentence. *Rhines*, 544 U.S. at 278. Petitioner should not be rewarded by having his habeas corpus proceedings stayed and held in abeyance. Therefore, the respondents respectfully request that petitioner's motion to stay and abate be denied.

### III

Alternatively, the respondents submit that petitioner cannot show the claim supporting his state court petition entitles him to relief. Petitioner argues this newly discovered evidence debunking Shaken Baby Syndrome proves he is actually innocent of capital murder. The respondents disagree.

But first, the respondents would note that actual innocence does not entitle petitioner to relief. "Actual innocence is a gateway claim made by petitioners in order to receive review of an otherwise procedurally barred claim." *Pruitt*, 2013 WL 3479422, at *2 (N.D. Miss. 2013).[16] Actual innocence has "never been held to state a ground for federal habeas relief . . . ." *Id.*[17] The Supreme Court of the United States has only gone so far as to assume habeas relief may be appropriate in a capital case, only if a "truly persuasive demonstration of actual innocence [was] made after trial [that] would render the execution of a defendant unconstitutional, and . . . there were no state avenue open to such a claim." *Herrera*, 506 U.S. at 417 (internal quotation marks omitted); *see House v. Bell*, 547 U.S. 518, 555, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The Fifth Circuit consistently rejects freestanding

---

[16]Citing *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999), *cert. denied*, 529 U.S. 1097, 120 S.Ct. 1830, 146 L.Ed.2d 774 (2000)

[17]Citing *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Coleman v. Thaler*, 2013 WL 2264347 (5th Cir. 2013); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003)

actual innocence claims such as the one petitioner presently advances.  *Cantu v. Thaler*, 632 F.3d 157, 167-168 (5th Cir. 2011).[18]

Additionally, petitioner's newly discovered evidence does not prove he is actual innocent of capital murder.  In order to prove actual innocence petitioner must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would [have found petitioner] eligible for the death penalty."  *Loden*, 2013 WL 5243670, at *11 (internal quotation marks omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 339, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).  This Court must strongly and conclusively presume petitioner is guilty.  *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005)  (quoting *Schlup*, 513 U.S. at 326 n. 42).[19]  The reliability of petitioner's evidence should be considered under the circumstances.  *Id.*  (*e. g.*, the time petitioner submitted the evidence, and the credibility of petitioner's expert affiants).  In that light, this evidence hardly proves petitioner's innocence.

The respondents submit petitioner has not shown an entitlement to relief.  Further, actual innocence based on a claim of newly discovered evidence provides no basis for granting relief.  Stay and abeyance is unnecessary.  Therefore, the respondents respectfully request this Court deny petitioner's motion to stay and abate proceedings pending state court successive petition.

---

[18]Citing *Dowthitt*, 230  F.3d at 741; *Graham*, 168 F.3d at 788.  *See also Pruitt*, 2013  WL 3479422, at *2.

[19]"'[E]xperience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.'"  *Bosley*, 409 F.3d at 664, n. 15 (quoting *Schlup*, 513 U.S. at 324)).

## IV

For the reasons stated above, the respondents submit petitioner's proceedings should not be stayed and held in abeyance. Petitioner's newly discovered evidence does not relate-back to his original Petition for Writ of Habeas Corpus and is barred by 28 U.S.C. § 2244(d)(1)(A). Petitioner's newly discovered evidence claim is procedurally defaulted and barred on the basis of independent and adequate state law grounds. Alternatively, petitioner's newly discovered evidence claim fails to demonstrate an entitlement to relief.

WHEREFORE, PREMISES CONSIDERED, the respondents respectfully request this Court deny petitioner's motion to stay and abate proceedings pending state court successive petition.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL STATE OF MISSISSIPPI

**BRAD A. SMITH**
SPECIAL ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 104321
*Counsel of Record*

by: s/ *Brad A. Smith*

**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205
Telephone:   (601) 359-3680
Facsimile:   (601) 359-3796
Email:          bsmit@ago.state.ms.us

## CERTIFICATE OF SERVICE

This is to certify that I, Brad A. Smith, Special Assistant Attorney General for the State of Mississippi, have electronically filed, this RESPONSE IN OPPOSITION TO MOTION TO STAY OR ABATE PROCEEDINGS PENDING STATE COURT SUCCESSIVE PETITION with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Mark D. Jicka    Graham P. Carner
Watkins & Eager, PLLC  Graham P. Carner, PLLC
P.O. Box 650     711 N. Congress Street
Jackson, MS 39205   Jackson, MS 39202

This, the 13th day of March, 2014.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**BRAD A. SMITH**
Special Assistant Attorney General
Miss. Bar No. 104321
*Counsel of Record*

by:  s/ *Brad A. Smith*

**OFFICE OF THE ATTORNEY GENERAL**
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680
Facsimile:  (601) 359-3796
Email:   bsmit@ago.state.ms.us

28